Rockingham
No. 2007-923

THE STATE OF NEW HAMPSHIRE

v.

DENNIS PRATTE

Argued: October 15, 2008
Opinion Issued: November 6, 2008

46

*Kelly A. Ayotte*, attorney general (*Francesca Stabile*, attorney, on the brief and orally), for the State.

*Jeffco, Starbranch & Soldati*, of Portsmouth (*Harry N. Starbranch, Jr.*, on the brief and orally), for the defendant.

GALWAY, J. The defendant, Dennis Pratte, appeals the denial of his motion for judgment notwithstanding the verdict (JNOV) by the Superior Court (*Nadeau*, J.), following his conviction for being a felon in possession of a deadly weapon. *See* RSA 159:3, I (2002). We reverse.

The facts are not in dispute. At trial, the State introduced evidence that the defendant had a bow, with several arrows, hanging on a rack on a wall in a recreational room in his residence, and had additional arrows located within the residence. The State also presented evidence that the defendant had used the bow and arrow to shoot and kill a porcupine on his property at some point in the past. The defendant was convicted by a jury of being

a felon in possession of a deadly weapon. Subsequently, the defendant moved for JNOV. The trial court denied the motion.

On appeal, the defendant does not dispute that he possessed the bow and arrows, nor that he is precluded from possessing a deadly weapon because he is a felon. *See* RSA 159:3, I. The primary issue before us is whether, under the circumstances of this case, any rational trier of fact could have found that the bow and arrow constitutes a deadly weapon.

In considering a motion for JNOV, the trial court cannot weigh the evidence or inquire into the credibility of the witnesses, and if the evidence adduced at trial is conflicting, or if several reasonable inferences may be drawn, the motion should be denied. *State v. Spinale*, 156 N.H. 456, 463 (2007). The jury's verdict should be upheld "unless no rational trier of fact could find guilt beyond a reasonable doubt, considering all the evidence and all reasonable inferences therefrom in the light most favorable to the State." *Id.* (quotation omitted). The question of whether JNOV is required because of the insufficiency of the evidence is a question of law. *State v. O'Neill*, 134 N.H. 182, 184 (1991). On appeal, "we objectively review the record to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Spinale*, 156 N.H. at 464 (quotations omitted).

Resolution of this issue requires that we engage in statutory interpretation. In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *State v. Gallagher*, 157 N.H. 421, 422 (2008). We first examine the language of the statute, and, where possible, we apply the plain and ordinary meanings to the words used. *Id.* at 422-23. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. *State v. Langill*, 157 N.H. 77, 84 (2008). We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result. *Franklin v. Town of Newport*, 151 N.H. 508, 510 (2004). Moreover, we do not consider the words and phrases in isolation, but rather within the context of the statute as a whole. *Grand China v. United Nat'l Ins. Co.*, 156 N.H. 429, 431 (2007).

RSA 159:3, I, provides that a person is guilty of a class B felony if he "[o]wns or has in his possession or under his control, a pistol, revolver, or other firearm, or slungshot, metallic knuckles, billies, stiletto, switchblade knife, sword cane, pistol cane, blackjack, dagger, dirk-knife, or other deadly weapon as defined in RSA 625:11, V" and has been convicted of a proscribed felony. A bow and arrow is not one of the enumerated weapons under RSA 159:3, I(a); therefore, to be considered a "deadly weapon" for purposes of that statute, a bow and arrow must fall within the definition of a deadly

weapon under RSA 625:11, V (2007). RSA 625:11, V defines deadly weapon as "any firearm, knife or other substance or thing which, in the manner it is used, intended to be used, or threatened to be used, is known to be capable of producing death or serious bodily injury." Thus, the State was required to prove not only that the defendant possessed the bow and arrow, but that in the manner the defendant used, intended to use, or threatened to use the bow and arrow, it was capable of producing death or serious bodily injury.

The State asserts that it satisfied this element by proving that the defendant actually used the bow and arrow in the past to cause a death, the death of the porcupine. Thus, the State contends that the death of an animal in the past is sufficient to prove that the defendant used the bow and arrow in a manner capable of producing death or serious bodily injury for purposes of RSA 625:11, V. The defendant, however, argues that RSA 625:11, V should be construed to include only death or serious bodily injury to a human, not that of an animal. We agree with the defendant.

 RSA 625:11, V does not specify that the phrase "death or serious bodily injury" pertains to a human being. However, to hold otherwise renders the statute impermissibly vague as such an expansive interpretation would not provide the ordinary person with adequate notice of those substances or things which would constitute a deadly weapon. A statute is not unconstitutionally vague "as long as its prohibitions are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with." *State v. Lamarche*, 157 N.H. 337, 340 (2008) (quotations omitted). "The underlying principle of vagueness is that no person should be held criminally responsible for conduct which he or she could not reasonably understand to be proscribed." *Id.* at 340-41 (brackets and quotation omitted).

 Taking the State's interpretation to its logical conclusion, any "substance or thing" used to produce the death of *any* living thing is a deadly weapon under RSA 625:11, V. For example, a person using poison to rid his residence of rodents or some other pest has clearly used a substance to produce a death. Under the State's interpretation, he or she would be in possession of a deadly weapon and, with the requisite underlying conviction, may be convicted of being a felon in possession of a deadly weapon pursuant to RSA 159:3, I. Reading RSA 625:11, V with an ordinary level of common sense, we cannot conclude that an ordinary person would understand this statute to mean that the use of such an item would constitute possession of a deadly weapon. Under the State's interpretation, the terms "death" and "serious bodily injury" are simply too vague to adequately notify the ordinary person of what may be included under the statute, thus

ultimately rendering the statute unconstitutional. "[A] statute will not be construed to be unconstitutional, where it is susceptible to a construction rendering it constitutional." *State v. Pierce*, 152 N.H. 790, 793 (2005) (brackets and quotation omitted). Here, the more logical reading of the statute, and the constitutionally permissible one, is to interpret RSA 625:11, V as limited to causing death or serious bodily injury to a human. If the legislature did not intend this interpretation, it is free to amend the language of the statute as it sees fit. *In the Matter of LaRue & Bedard*, 156 N.H. 378, 381 (2007)

█ To the extent the State argues that a bow and arrow is inherently a deadly weapon, we disagree. The State, relying solely upon an unpublished decision from Delaware, argues that because a bow and arrow is a weapon "designed to kill its target," it is a deadly weapon. This interpretation ignores the plain language of both RSA 159:3, I, and RSA 625:11, V. RSA 159:3, I, requires that any item not specifically enumerated in the statute as a deadly weapon, like a bow and arrow, also satisfy RSA 625:11, V. That statute defines deadly weapon, in part, as any substance or thing which "in the manner it is used, intended to be used, or threatened to be used, is known to be capable of producing death or serious bodily injury." RSA 625:11, V. However, the State's interpretation requires that we ignore whether, in the manner this defendant "used, intended to use, or threatened to use" this bow and arrow, it was known to be capable of causing death or seriously bodily injury, and instead end our inquiry with whether the bow and arrow, independent of any action by the defendant, is capable of doing so. In essence, the State would have us add to the enumerated list of deadly weapons specified in RSA 159:3, I, any object that is capable of causing death or serious bodily injury to any thing. The plain language of RSA 159:3, I, and RSA 625:11, V prohibits this result. As we have previously stated, it is the manner in which the "other substance or thing" is used, and the circumstances surrounding its use, that makes it a deadly weapon under RSA 625:11, V. *See State v. Hull*, 149 N.H. 706, 714 (2003). Thus, this determination requires more than the limited examination of the object itself suggested by the State. *Id.* at 714-15.

█ With this interpretation of RSA 625:11, V, we now examine whether a rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found that this defendant was in possession of a deadly weapon beyond a reasonable doubt. *See Spinale*, 156 N.H. at 464. We conclude that the evidence was insufficient. Viewed in the light most favorable to the State, the only evidence in this case demonstrating actual use involved the use of the bow and arrow to kill a porcupine. There was no evidence presented

from which any rational trier of fact could have concluded that the manner in which the defendant used, intended to use, or threatened to use the bow and arrow was known to be capable of causing the death of, or serious bodily injury to, a human. Because the death of the porcupine, standing alone, was insufficient to convict the defendant under RSA 159:3, I, the trial court erred in denying his request for JNOV.

The defendant also argues that the indictment was insufficient as a matter of law. However, because we conclude that the defendant did not possess a deadly weapon, we need not address this issue. *See Gill v. Gerrato*, 156 N.H. 595, 599 (2007).

*Reversed.*

BRODERICK, C.J., and DUGGAN and HICKS, JJ., concurred; DALIANIS, J., dissented.

DALIANIS, J., dissenting. I would affirm the conviction of the defendant because, unlike the majority, I believe that the bow and arrow that he used to kill a porcupine is a deadly weapon. *See* RSA 159:3, I (2002); RSA 625:11, V (2007). To my mind, a bow and arrow that has killed an animal has been used in a manner in which it is "known to be capable of producing death or serious bodily injury" to a human being. RSA 625:11, V. Had a human being been in the porcupine's place, the human being would at least have suffered a serious bodily injury. The defendant, therefore, used the bow and arrow in a manner that is known to be capable of seriously injuring or killing a human being.

A deadly weapon as defined in RSA 625:11, V is "any firearm, knife or other substance or thing which, in the manner it is used, intended to be used, or threatened to be used, is known to be capable of producing death or serious bodily injury." "The critical phrase is 'the manner [in which an object] is used, intended to be used, or threatened to be used, [it] is known to be capable of producing death or serious bodily injury.'" *State v. Hull*, 149 N.H. 706, 714 (2003). An innocuous object can become a deadly weapon when it is used to assault someone. *Id.*; *see State v. Kiluk*, 120 N.H. 1, 5 (1980) (dinner fork is deadly weapon when used to stab someone in eye). To be a deadly weapon, the object need not be "intrinsically capable of causing death or injury." *Hull*, 149 N.H. at 715. Nor does it have to actually cause injury. *Id.* Rather, whether it has been used, intended to be used or threatened to be used in a manner that is known to be capable of killing or causing serious bodily injury to someone "must be evaluated in light of what did happen rather than the conjecture about what *might* have happened if the facts had been different than they were." *Id.* (quotation omitted).

While I agree with the majority that to be a deadly weapon the object must have been used, threatened to be used, or intended to be used in such a manner that is known to be capable of killing or seriously injuring a human, I believe that the bow and arrow in this case meets this definition.

Here, the defendant used his bow and arrow to kill a porcupine. Using it in this manner — to kill a living thing — is a use that is known to be capable of killing or causing serious bodily injury to a person. A mouse trap would not be a deadly weapon because, even if it were used to kill a mouse, the manner in which it was used to do this is not known to be capable of killing or causing serious bodily injury to a human. A human would not be killed or seriously injured by a mouse trap in the same way that a mouse would be. By contrast, a human would be killed or seriously injured by a bow and arrow in the exact same way that the porcupine in this case was killed.

Given my interpretation of RSA 625:11, V, I believe that a rational trier of fact, viewing all of the evidence in the light most favorable to the State, could have found beyond a reasonable doubt that the defendant possessed a deadly weapon. A rational trier of fact could have concluded that the manner in which the defendant used the bow and arrow — to kill a porcupine — is known to be capable of causing the death of, or serious bodily injury to, a human. For these reasons, therefore, I would affirm the defendant's conviction.