Merrimack
No. 2010-236

THE STATE OF NEW HAMPSHIRE

v.

DIEGO DURAN

Argued: June 16, 2011
Opinion Issued: September 20, 2011

370

*Michael A. Delaney*, attorney general (*Stephen D. Fuller*, senior assistant attorney general, on the brief and orally), for the State.

*Pamela E. Phelan*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

DUGGAN, J. The defendant, Diego Duran, appeals his conviction by a jury on one count of being a felon in possession of a deadly weapon. *See* RSA 159:3, I (2002); RSA 625:11, V (2007). He argues that the Trial Court (*McNamara*, J.) erred in denying his motion to dismiss because there was insufficient evidence both that he possessed the weapon and that the weapon was a deadly weapon. We affirm.

The jury could have found the following facts. On April 19, 2009, between 6 and 8 p.m., the defendant, who is an inmate at the New Hampshire State Prison, was showering. At approximately the same time, a corrections officer, Ian Stringer, observed another inmate act suspiciously and place something in his shoe in the prison yard. Stringer asked the inmate to show him what was in his shoe, but the inmate ignored him and walked into the bathroom where the defendant was showering. The defendant and the inmate were the only two inmates in the bathroom and the defendant was the only person in the shower area.

Once in the bathroom, Stringer observed the other inmate throw the item from his shoe into the toilet and then ask the defendant to flush the toilet. Stringer ordered the defendant not to flush the toilet, but the defendant flushed it anyway. While Stringer removed the other inmate from the bathroom, Sergeant Christian Pelletier entered and told the defendant that he was "going for a walk" because he interfered with a search. After the defendant stepped out of the shower, Pelletier instructed him to collect his property, which included a net bag and sneakers. The bag did not have a name on it, but the defendant admitted that it was his bag. The defendant responded that he wished to leave his belongings in the bathroom and Pelletier again instructed him to pick them up. The defendant then moved slowly to do so, but Pelletier determined he was moving too slowly and grabbed the net bag.

After taking the net bag, Pelletier felt the outside of it and observed a radio inside. He also moved around the laundry that was inside the bag and then felt a hard object. Based upon his eleven years of experience, he determined that the object was likely a "shank." Pelletier also testified that it was very unusual for an inmate to leave expensive property, like sneakers or a radio, unattended.

Another corrections officer, Scott Haskell, searched the bag and removed its contents. The laundry inside the bag included a sock with the defendant's name on it. The shank, which Pelletier testified "is a homemade weapon in the prison, made to seriously mutilate or kill someone," was located in that sock. He also testified that the shank found in the defendant's sock was "one of the better shanks found," and that there is no "utilitarian use for a shank."

At the close of the State's case, the defendant moved to dismiss, arguing that the State failed to prove that he possessed the weapon and that it met the statutory definition of a deadly weapon. The court denied the motion. The jury subsequently convicted him and this appeal followed.

On appeal, the defendant argues that there was insufficient evidence both that he possessed the shank and that it constituted a deadly weapon. To prevail on a sufficiency of the evidence challenge, the defendant must prove that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. *State v. Evans*, 150 N.H. 416, 424 (2003). When the evidence is solely circumstantial, it must exclude all rational conclusions except guilt. *Id.* Under this standard, however, we still consider the evidence in the light most favorable to the State and examine each evidentiary item in context, not in isolation. *Id.* "The proper analysis is not whether every possible conclusion has been excluded but, rather, whether other *rational* conclusions based on the evidence have been excluded." *State v. Tayag*, 159 N.H. 21, 24 (2009) (quotation omitted).

To prove possession, the State had to establish that the defendant "had custody of the [shank] and exercised dominion and control over it." *State v. Crie*, 154 N.H. 403, 406 (2006) (quotation omitted). As is the case here, when the defendant does not actually possess a weapon, the State must prove constructive possession. *See State v. Smalley*, 148 N.H. 66, 68-69 (2002) (addressing constructive possession of a controlled substance). Constructive possession can be inferred from incriminating statements or circumstances linking the defendant to the weapon and such possession need not be exclusive. *Id.* at 69.

The defendant must have control over the weapon, meaning that he "either owns that [weapon], he's leased that [weapon], he has borrowed that [weapon], or somehow gotten control over that [weapon], and that the defendant has the ability to exercise control over the [weapon] in a sense that he can determine who may have the ultimate use of that [weapon]." *State v. Pike*, 128 N.H. 447, 450 (1986) (quotation and brackets omitted). "The question then is does [the defendant] have the power over the use of the weapon? If he does, he controls it." *Id.* (quotation and ellipsis omitted).

In this case, there was sufficient evidence for the jury to find beyond a reasonable doubt that the defendant possessed the shank found in the net bag that the defendant admitted belonged to him. The corrections officer found the shank in a sock, which was in the defendant's net bag and in the bathroom where the defendant was showering. The defendant's name was on the sock and the laundry bag contained other items belonging to the

defendant. *Cf. Smalley*, 148 N.H. at 69 ("personal possessions of the defendant standing in close proximity to the controlled substance may provide a sufficiently close nexus between the defendant and the substance to allow the jury to infer possession"). Additionally, the defendant declined to pick up his belongings when ordered to by the corrections officer, who testified that it was unusual for an inmate to leave expensive property unattended. While the defendant argues that another inmate could have placed the shank in his bag, the jury could have drawn reasonable inferences based upon the evidence presented and concluded that the shank belonged to the defendant. *See Crie*, 154 N.H. at 406. Accordingly, a rational trier of fact could have found beyond a reasonable doubt that the defendant possessed the shank.

The defendant next argues that no rational trier of fact could have found that the shank is a deadly weapon. RSA 159:3, I, provides that a person is guilty of a class B felony if he "[o]wns or has in his possession or under his control, a pistol, revolver, or other firearm, or slungshot, metallic knuckles, billies, stiletto, switchblade knife, sword cane, pistol cane, blackjack, dagger, dirk-knife, or other deadly weapon as defined in RSA 625:11, V," and has previously been convicted of a proscribed felony. A shank is not one of the enumerated weapons under RSA 159:3, I(a). Accordingly, a shank is only considered a "deadly weapon" for purposes of that statute if it falls within the definition of a deadly weapon under RSA 625:11, V.

RSA 625:11, V defines a deadly weapon as "any firearm, knife or other substance or thing which, in the manner it is used, intended to be used, or threatened to be used, is known to be capable of producing death or serious bodily injury." Thus, the State was required to prove not only that the defendant possessed the shank, but also that in the manner in which the defendant used, intended to use, or threatened to use the shank, it was capable of producing death or serious bodily injury.

The defendant points to our decision in *State v. Pratte*, 158 N.H. 45 (2008), and argues that "[t]he mere fact that the item could cause serious bodily injury or death" is insufficient to prove that it constitutes a deadly weapon. In *Pratte*, the defendant possessed a bow and arrow in his home and had used it in the past to kill a porcupine. *Pratte*, 158 N.H. at 46. We first rejected the State's argument that a bow and arrow is inherently a deadly weapon because it would require that we ignore the phrase "used, intended to be used, or threatened to be used." *Id.* at 49. We reasoned that if we interpreted the statute in such a manner, our inquiry would end with whether the weapon, independent of any action by the defendant, was capable of causing death or serious bodily injury. *Id.* Accordingly, we

overturned the defendant's conviction because there was no evidence that he used, intended to use, or threatened to use a bow and arrow in a manner known to be capable of causing death or serious bodily injury to a human. *Id.* at 49-50.

The defendant contends that the shank was never within his reach or under his immediate control and that he never attempted to retrieve it from his bag. Moreover, relying upon *Pratte*, he asserts that the mere fact he was in prison does not render the shank a deadly weapon.

■ We agree with the defendant that the nature of the weapon does not automatically render it a deadly weapon pursuant to RSA 625:11, V. *See id.* However, unlike the bow and arrow at issue in *Pratte*, where the evidence presented established that the defendant used the bow and arrow for recreational purposes only, *see id.* at 46, a shank, possessed by a prison inmate, has no such uses, *see State v. Berry*, 833 S.W.2d 332, 334 (Tex. Crim. App. 1992) ("It cannot be seriously asserted that inmates are making these shanks to clean their fingernails or make wood carvings to send home for the holidays." (quotation omitted)). Indeed, the State presented testimony that a shank is "made to seriously mutilate or kill someone," and that there is no "utilitarian" use for a shank. Simply stated, the only reason an individual would have a shank in prison is to cause death or serious bodily injury. *See United States v. Vahovick*, 160 F.3d 395, 397 (7th Cir. 1998) ("Unlike the felon who may arguably have a legitimate non-violent reason for possessing a weapon outside of prison, there is simply no acceptable use for a weapon by an inmate in a prison . . . ." (quotation omitted)).

■ We again emphasize that the specific manner of use or intended use and the circumstances surrounding that use or intended use determine whether an object is a deadly weapon under RSA 625:11, V. *Pratte*, 158 N.H. at 49; *State v. Hull*, 149 N.H. 706, 714-15 (2003) (explaining that a reasonable jury could determine that a truck could be a deadly weapon where an intoxicated driver hit a police officer and drove into oncoming traffic). In this case, however, the circumstances surrounding the defendant's possession of a shank in a prison indicate only one potential use — to cause death or serious bodily injury to another human. Accordingly, a rational trier of fact could have found beyond a reasonable doubt that the shank was a deadly weapon.

*Affirmed.*

DALIANIS, C.J., and HICKS, CONBOY and LYNN, JJ., concurred.