Rockingham
No. 2010-274

THE STATE OF NEW HAMPSHIRE

v.

TIMOTHY GINGRAS

Argued: September 15, 2011
Opinion Issued: November 2, 2011

*Michael A. Delaney*, attorney general (*Thomas E. Bocian*, assistant attorney general, on the brief and orally), for the State.

*Stephen T. Jeffco, P.A.*, of Portsmouth (*Stephen T. Jeffco* on the brief and orally), for the defendant.

LYNN, J. The defendant, Timothy Gingras, was convicted of reckless conduct, RSA 631:3 (2007), criminal threatening, RSA 631:4, I(a) (2007), and criminal mischief, RSA 634:2 (2007), following a jury trial in Superior Court (*McHugh, J.*). On appeal, he challenges only the criminal threatening and reckless conduct convictions, arguing that the trial court erred: (1) in sentencing him on both convictions; (2) in failing to give his proposed self-defense jury instruction; and (3) in instructing the jury that brandishing a firearm constituted the use of deadly force. We reverse these two convictions and remand.

I

Viewed in the light most favorable to the State, the evidence was sufficient for the jury to find the following facts. On June 26, 2009, the defendant was driving on Route 125 in Epping when Andrew Mangini pulled in front of him from the left, causing the defendant to swerve to avoid hitting Mangini's car. The defendant screamed profanities at Mangini, who apologized and then tried to ignore the defendant. The defendant persisted, pulling in front of Mangini, alighting from his vehicle, and approaching

Mangini's car on foot. The defendant slapped the hood of Mangini's car and continued to yell and swear at Mangini, who remained in his car. The defendant then jumped onto the hood of Mangini's car with both feet, causing damage to the vehicle. At this point Mangini became angry and got out of his car. Mangini shouted profanities at the defendant and said he would beat him up. Because Mangini was physically larger than the defendant, the defendant's attitude changed from anger to fright, and he returned to his car with Mangini following him. The defendant entered his vehicle, withdrew a handgun (for which he held a valid permit to carry) from the glove compartment, and, as Mangini approached the driver's window, pointed the gun at Mangini's chest and threatened to shoot him if he did not back away. Mangini put his hands in the air, retreated to his own car, and called 911. The police arrived and arrested the defendant shortly thereafter.

## II

The defendant first argues that the state and federal double jeopardy clauses prohibit his convictions for criminal threatening and reckless conduct because both offenses arise out of the same conduct. We review questions of constitutional law *de novo*. *State v. Farr*, 160 N.H. 803, 807 (2010). We first consider the defendant's constitutional arguments under the State Constitution, referring to federal decisions only for guidance. *See State v. Ball*, 124 N.H. 226, 231-33 (1983).

■ Part I, Article 16 of the New Hampshire Constitution protects a criminal defendant against multiple punishments for the same offense. *State v. Glenn*, 160 N.H. 480, 486 (2010) (citations omitted). "Two offenses will be considered the same for double jeopardy purposes unless each requires proof of an element that the other does not." *State v. McGurk*, 157 N.H. 765, 773 (2008) (quotation and brackets omitted). We focus upon whether proof of the elements of the crimes as charged will in actuality require a difference in evidence. *State v. Ford*, 144 N.H. 57, 65 (1999). "In making this inquiry, we review and compare the statutory elements of the charged offenses in light of the actual allegations contained in the indictments." *State v. Liakos*, 142 N.H. 726, 730 (1998) (quotation omitted).

■ The indictments against the defendant in this case — for criminal threatening and reckless conduct — each required the State to prove facts not necessary to the other charge. A person is guilty of criminal threatening when, "[b]y physical conduct, the person purposely places or attempts to place another in fear of imminent bodily injury or physical contact." RSA 631:4, I(a) (2007). A person is guilty of reckless conduct if he "recklessly engages in conduct which places or may place another in danger of serious

bodily injury." RSA 631:3 (2007). Whereas the criminal threatening statute requires proof that the defendant placed or attempted to place Mangini in *fear* of imminent bodily injury, it does not require proof that Mangini was actually placed in danger. The reckless conduct statute, by contrast, does require that the defendant placed or may have placed Mangini in *actual danger* of serious bodily injury regardless of whether Mangini feared such injury. Although the two indictments arose out of the same transaction, *see State v. Sanchez*, 152 N.H. 625, 630 (2005), they each required the State to prove a separate element.

Our analysis applying the State Constitution's "difference in evidence test" also disposes of the defendant's claim under the Federal Constitution. *See id.* at 632. We therefore reach the same result under the Federal Constitution as we do under the State Constitution.

### III

The defendant next argues that, in instructing the jury on the issue of self-defense, the trial court erred in failing to give a full definition of the term "deadly force." In addressing this issue, we note at the outset that our analysis is circumscribed by three points that are not in dispute. First, the State concedes that the evidence presented at trial was sufficient to require that a self-defense instruction be given. Second, during closing the State specifically argued that the defendant had used deadly force. Third and most important, the defendant makes no claim that his actions in pointing a gun at Mangini did not constitute the use of deadly force as a matter of law. *But see State v. Cannell*, 916 A.2d 231, 234 (Me. 2007) ("[W]e have unequivocally held that using a gun in a threatening manner without discharging the weapon constitutes nondeadly force only, and does not amount to the use of deadly force." (citations omitted)); *Rivero v. State*, 871 So. 2d 953, 954 (Fla. Dist. Ct. App. 2004) ("Pointing a firearm (without firing it) amounts to the use of nondeadly force."). We therefore proceed on the assumption that, based on the evidence presented, the issue of whether the defendant used deadly force was properly a matter to be decided by the jury. Where, as here, there is some evidence that the defendant acted in self-defense, the State bears the burden of disproving this defense beyond a reasonable doubt. *State v. McMinn*, 141 N.H. 636, 645 (1997).

As pertinent to this case, RSA 627:4, I (2007 & Supp. 2010) allows a person to use non-deadly force upon another person in order to defend himself from what he reasonably believes to be the imminent use of unlawful, non-deadly force by the other person, and provides that he may use the degree of non-deadly force that he reasonably believes to be necessary for this purpose. In order to use deadly force against another person in self-defense, however, the person must reasonably believe that

the other person is about to use deadly force against him. RSA 627:4, II(a) (2007 & Supp. 2010). RSA 627:9 (2007) defines "deadly force" and "non-deadly force" as follows:

II. "Deadly force" means any assault or confinement which the actor commits with the purpose of causing or which he knows to create a substantial risk of causing death or serious bodily injury. Purposely firing a firearm capable of causing serious bodily injury or death in the direction of another person or at a vehicle in which another is believed to be constitutes deadly force.

. . . .

IV. "Non-deadly force" means any assault or confinement which does not constitute deadly force.

The defendant asked the court to instruct the jury on the definition of both deadly and non-deadly force. With respect to deadly force, the court agreed to read to the jury the first sentence of RSA 627:9, II, but refused to read the second sentence of the statute because there was no evidence that the defendant had fired his gun.

"The purpose of the trial court's charge is to state and explain to the jury, in clear and intelligible language, the rules of law applicable to the case." *State v. Johnson*, 157 N.H. 404, 407 (2008) (citation omitted). "When reviewing jury instructions, we evaluate allegations of error by interpreting the disputed instructions in their entirety, as a reasonable juror would have understood them, and in light of all the evidence in the case." *Id.* "We determine if the jury instructions adequately and accurately explain each element of the offense and reverse only if the instructions did not fairly cover the issues of law in the case." *Id.* Whether a particular instruction is necessary, and the scope and wording of the instruction, are committed to the sound discretion of the trial court, which we review for an unsustainable exercise of discretion. *Id.*

Adopting the trial court's rationale, the State argues that because there was no evidence that the defendant discharged his firearm, there was no basis to give that portion of the deadly force definition that related to the discharge of a firearm. More specifically, the State contends the defendant desired the instruction relating to the discharge of a firearm so that he could argue that, because he did not discharge his gun, he did not use deadly force. The State characterizes such an argument as the defendant's "theory of the case" rather than his "theory of defense," and, citing *State v. Bruneau*, 131 N.H. 104 (1988), claims that the trial court was under no obligation to give an instruction covering such theory. We find the State's position unpersuasive.

■ While it is true that there was no evidence the defendant fired his gun, the absence of such evidence was the very point of his wanting the second sentence of the deadly force definition read to the jury. Unlike the instructions requested in *Bruneau*, which merely sought to have the trial court place its imprimatur on the defendant's position concerning how the evidence should be evaluated, *see Bruneau*, 131 N.H. at 117, the instruction at issue here clearly dealt with a true theory of defense. That is, the instruction dealt with a "theory . . . about the legal significance of claimed facts, and it thus falls within the scope of a judge's responsibility to instruct the jury on the law." *Id.* at 117-18 (citation omitted).

■ ■ Both the definitions of "deadly force" and "non-deadly force" require that there be an "assault" or a "confinement." Since there is no evidence of a confinement in this case, we focus on the term "assault." Although RSA 627:9 does not further define the term "assault," it does make clear that the difference between an assault that involves the use of deadly force and one that does not is that the former must involve conduct that "create[s] a substantial risk of causing death or serious bodily injury," whereas the latter does not. The second sentence of RSA 627:9, II further illuminates the distinction between deadly and non-deadly force by indicating that discharging a firearm in the direction of another person or at a vehicle in which a person is believed to be constitutes deadly force. That the legislature found it necessary to include the second sentence in RSA 627:9, II is a strong indication that, in the absence of this provision, such discharge of a firearm would not, without more, constitute the use of deadly force — otherwise there would have been no need for the legislature to include it. *See State v. Pierce*, 152 N.H. 790, 791 (2005) ("All words of a statute are to be given effect, and the legislature is presumed not to use words that are superfluous or redundant.").

■ If the jury had been given the full definition of deadly force, including the second sentence of RSA 627:9, II, it could well have found that, if the legislature deemed it necessary to include a specific provision dealing with the firing of a gun at another person or a vehicle in order to capture such conduct within the ambit of deadly force, then the defendant's conduct of merely pointing his gun at Mangini without discharging it constituted the use of non-deadly force. However, without knowing about the second sentence of RSA 627:9, II, there is a significantly greater likelihood that the jury may have determined that the defendant's act of pointing his gun at Mangini did constitute the use of deadly force. And if the jury made this finding, it may then have determined, in accordance with the court's instructions, that the defendant's use of deadly force in self-defense was not justified inasmuch as Mangini was not armed with a weapon and had not

threatened the defendant with the imminent use of deadly force. On this basis, the jury could have rejected the defendant's claim of self-defense and found him guilty of the criminal threatening and reckless conduct offenses.

Without a full definition of "deadly force," the likelihood of jury confusion as to whether the defendant used deadly force is enhanced in this case because both the criminal threatening and the reckless conduct indictments alleged that the defendant's firearm constituted a "deadly weapon as defined in RSA 625:11, V," and the court gave the following instruction as to the meaning of deadly weapon:

> Thirdly, that the defendant used a deadly weapon. A deadly weapon is defined as any firearm, knife or any other substance or thing which, in the manner it is used, intended to be used or threatened to be used is known to be capable of producing death or serious bodily injury.
>
> ... Thus, if you conclude that the weapon used by the defendant was a firearm, and if you further find that the defendant, by his actions, *threatened to fire it* at a person, then you should conclude that the person — that the weapon, excuse me, is a deadly weapon capable of causing death or serious bodily injury.

(Emphasis added.)

Inasmuch as there could be no serious dispute that the defendant used his gun in a manner constituting it a deadly weapon when he pointed it at Mangini and threatened to shoot him if he did not back off, *see State v. Kousounadis*, 159 N.H. 413, 425 (2009), without proper instructions the jury could easily have assumed that if the defendant had used a deadly weapon it automatically followed that he had used deadly force. But as the discussion above demonstrates, such reasoning is incorrect. The definitions of "deadly weapon" and "deadly force" are not synonymous, *compare* RSA 625:11, V (2007) *with* RSA 627:9, II, and a finding of the use of deadly force does not necessarily follow from a finding that a person brandished or threatened to use a deadly weapon.

Again assuming that, under the facts of this case, it was for the jury to decide whether the defendant used deadly force, we conclude that the trial court's failure to provide the jury with the full definition of deadly force prejudiced the defendant's ability to have the jury properly evaluate his claim that he acted in self-defense. We therefore hold that the trial court unsustainably exercised its discretion in refusing to give the requested instruction. *See State v. Drake*, 155 N.H. 169, 172 (2007). Accordingly, we reverse the defendant's convictions on the indictments for criminal threatening and reckless conduct and remand for a new trial on those charges.

## IV

In light of our conclusion that reversal is required because of the trial court's failure to give a complete instruction on the definition of deadly force, we need not consider the defendant's final argument — that the trial court committed plain error by phrasing the jury instructions in such a manner as to convey to the jury the impression that the defendant had in fact used deadly force.

*Reversed and remanded.*

DALIANIS, C.J., and DUGGAN, HICKS and CONBOY, JJ., concurred.