# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2015-0228, <u>State of New Hampshire v. Steven Dupont</u>, the court on February 23, 2017, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case.

The defendant, Steven Dupont, appeals his conviction, following a jury trial in Superior Court (<u>Bornstein</u>, J.), of first degree assault with a deadly weapon. <u>See</u> RSA 631:1, I(b) (2016). He also appeals the trial court's failure to credit him with 103 days of pretrial confinement. Because the State concedes error on the pre-trial confinement issue, we need not address it. We reverse the defendant's conviction and remand.

We take the following facts from the record. The defendant was tried on three charges arising out of an incident that occurred on or about December 31, 2013: negligent homicide, <u>see</u> RSA 630:3, I (2016); manslaughter, <u>see</u> RSA 630:2, I(b) (2016); and first degree assault, <u>see</u> RSA 631:1, I(b). The assault indictment alleged, in pertinent part, that the defendant:

> did commit the crime of **First Degree Assault**, in that he knowingly caused bodily injury to [the victim] by means of a deadly weapon, <u>to wit</u>, his fist, a deadly weapon in the manner that it was used, when he struck [the victim] in the face with his fist causing a mucosal laceration along the right side of [the victim's] upper labial frenulum and a mucosal contusion to his lower lip . . . .

Prior to trial, the defendant filed a notice of defense of justification, to which the State objected. The defendant also requested a jury instruction on the use of justifiable non-deadly force. <u>See</u> RSA 627:4, I (2016). The State again objected, asserting first that the evidence failed to support either a deadly or non-deadly force self-defense instruction, but also arguing that "if the Court [were] inclined to give an instruction, . . . the deadly force instruction is the only appropriate instruction in this case given the charges." The court denied the defendant's request for a non-deadly force self-defense instruction, finding it "legally unavailable to the Defendant." The court explained that if the jury found that the State had proven all of the elements of first degree assault beyond a reasonable doubt, "and specifically if [it found] that the [d]efendant caused bodily injury by means of a deadly weapon," then the jury would necessarily have found that the defendant used deadly force. The court also

declined to give a deadly force self-defense instruction, "find[ing] that there [was] not some evidence to support" it. The jury returned verdicts of guilty as to the first degree assault charge and not guilty as to negligent homicide and manslaughter.

On appeal, the defendant argues that the trial court erred in failing to instruct the jury on non-deadly force self-defense. He appears to concede that a portion of his challenge is not preserved because trial counsel did not "affirmatively dispute" the judge's reasoning on that issue. He presents, therefore, a plain error challenge. At oral argument we questioned whether the issue actually had been preserved and whether our review is constrained in any way by the defendant's apparent concession.

It is well-established that we are not bound by a party's concession of law. See, e.g., Orloff v. Willoughby, 345 U.S. 83, 87 (1953) (stating "[t]his Court, of course, is not bound to accept the Government's concession that the courts below erred on a question of law"). Nor are we bound by a party's representations regarding the contents of the record. See, e.g., People v. Curren, 228 P.3d 253, 257 (Colo. App. 2009) ("Because a record on appeal speaks for itself, an appellate court may accept, but is not bound by, the concessions of counsel regarding the record's contents or inferences drawn therefrom."). Accordingly, even assuming the defendant concedes that a portion of his argument on appeal was not preserved, we decline to accept that concession and proceed to determine the issue ourselves.

The transcript of the February 2, 2015 chambers conference at which the court made the challenged ruling shows that the defendant's counsel noted her disagreement with the court's ruling, her opinion that the evidence warranted the instruction, and her intent to preserve the issue for appeal. We thus conclude that the issue before us was preserved and proceed to address it on the merits. See State v. Hast, 133 N.H. 747, 749 (1990) (concluding defendant's objection to court's failure to give self-defense instruction preserved all issues on appeal).

"We review the trial court's decision not to give a jury instruction for an unsustainable exercise of discretion." State v. Vassar, 154 N.H. 370, 373 (2006). "A requested instruction on a party's theory of defense must be given if such theory is supported by some evidence, and refusal to charge on that defense is reversible error." State v. McMinn, 141 N.H. 636, 644-45 (1997) (quotation omitted). In this context, "some evidence" means "that there must be more than a minutia or scintilla of evidence." Vassar, 154 N.H. at 373 (quotation omitted). As we explained in McMinn, "[o]nce evidence of self-defense is admitted, an instruction is required even if the evidentiary support is not overwhelming because the State bears the burden of disproving this statutory defense beyond a reasonable doubt." McMinn, 141 N.H. at 645

2

(quotation and citation omitted). We further noted that "when evidence of self-defense is admitted, conduct negating the defense becomes an <u>element</u> of the charged offense which the State must prove beyond a reasonable doubt." <u>Id</u>. (citation omitted).

During the February 2 chambers conference, the trial court made numerous references to the "some evidence" standard, at times stating that it would "assume without deciding that there is some evidence to support a non-deadly force instruction," and at other times appearing to make that finding. On appeal, the State concedes that the trial court "found that there was some evidence the defendant may have believed or actually believed that he was about to be subjected to non-deadly force." (Quotation omitted.) <u>See</u> <u>State v. Gingras</u>, 162 N.H. 633, 637 (2011) (noting State's concession that evidence presented at trial was sufficient to require self-defense instruction).

The defendant argues that the trial court "erred in equating 'deadly force' with 'deadly weapon.'" "Non-deadly force" is defined by statute to mean, in pertinent part, "any assault or confinement which does not constitute deadly force." RSA 627:9, IV (2016). "Deadly force," in turn, is defined, in pertinent part, to "mean[] any assault or confinement which the actor commits with the purpose of causing or which he knows to create a <u>substantial risk</u> of causing death or serious bodily injury." RSA 627:9, II (2016) (emphasis added). Finally, "[d]eadly weapon" is defined to "mean[] any firearm, knife or other substance or thing which, in the manner it is used, intended to be used, or threatened to be used, is known to be <u>capable</u> of producing death or serious bodily injury." RSA 625:11, V (2016) (emphasis added).

We noted in <u>Gingras</u> that "[t]he definitions of 'deadly weapon' and 'deadly force' are not synonymous." <u>Gingras</u>, 162 N.H. at 640. The State concedes as much, but asserts that "the trial court's analysis was more sophisticated than the defendant gives credit." Specifically, the State argues:

> The trial court did not simply conclude that the presence of a deadly weapon automatically equated to unjustifiable use of deadly force. Rather, it said that proof of all the facts and elements as alleged in the first degree assault indictment would combine to negate the justifiable use of non-deadly force. In other words, the defendant could not be convicted of first degree assault unless the State proved beyond a reasonable doubt that (1) the defendant knowingly used his fist in a manner capable of producing death or serious bodily injury, (2) he was aware he was using his fist in a manner capable of producing death or serious bodily injury, and (3) he actually caused bodily injury. If the jury found that those facts and elements were proven beyond a reasonable doubt, they

3

would have made essential factual and legal findings that the defendant used deadly force.

(Citation omitted.) We disagree.

Notwithstanding their more nuanced approach, neither the State's argument nor the trial court's reasoning frees this case from the control of Gingras, in which we held that the trial court unsustainably exercised its discretion in failing to instruct the jury on the complete definition of deadly force. See id. We reasoned that, without knowing that the statutory definition of deadly force specifically provided that purposely firing a gun in the direction of another person or at a vehicle believed to be occupied by another constitutes deadly force, there was a "significantly greater likelihood that the jury may have determined that the defendant's act of pointing his gun at [the victim] did constitute the use of deadly force." Id. at 639. We further explained that "the likelihood of jury confusion as to whether the defendant used deadly force [was] enhanced" because two of the indictments against the defendant "alleged that the defendant's firearm constituted a 'deadly weapon as defined in RSA 625:11, V.'" Id. at 640. We stated:

> Inasmuch as there could be no serious dispute that the defendant used his gun in a manner constituting it a deadly weapon when he pointed it at [the victim] and threatened to shoot him if he did not back off, without proper instructions the jury could easily have assumed that if the defendant had used a deadly weapon it automatically followed that he had used deadly force. But . . . such reasoning is incorrect. The definitions of "deadly weapon" and "deadly force" are not synonymous, and a finding of the use of deadly force does not necessarily follow from a finding that a person brandished or threatened to use a deadly weapon.

Id. (citations omitted).

The State attempts to distinguish Gingras on the basis that "[u]nlike the gun in Gingras, the defendant's fist is not an inherently deadly weapon." The State's argument fails, however, because "the nature of [a] weapon does not automatically render it a deadly weapon pursuant to RSA 625:11, V." State v. Duran, 162 N.H. 369, 374 (2011); see also State v. Pratte, 158 N.H. 45, 49 (2008). With the gun in Gingras, no less than the defendant's fist here, establishment of the deadly weapon element required the jury to find that the object in question, "in the manner it [was] used, intended to be used, or threatened to be used, is known to be capable of producing death or serious bodily injury." RSA 625:11, V; Gingras, 162 N.H. at 640. Furthermore, here, no less than in Gingras, establishment of that element does not compel a finding that the defendant, in committing the assault with an object "known to be capable of producing death or serious bodily injury" in the manner it was

4

used, RSA 625:11, V (emphasis added), also knew that it "create[d] a substantial risk of causing death or serious bodily injury," RSA 627:9, II (emphasis added)—that is, that he used deadly force. See Gingras, 162 N.H. at 640.

We are unswayed by the State's argument that "a qualitative distinction between the words 'capable' and 'substantial risk' is not what distinguishes" the definitions of deadly weapon and deadly force. First, we are not persuaded that the dictionary definition chosen by the State to interpret the term "substantial" is better than that urged by the defendant. Moreover, we will not now revisit our holding in Gingras that, given the difference in applicable statutory definitions, a finding that a defendant used deadly force does not "automatically" or "necessarily follow" from a finding that he used a deadly weapon. Id.

Finally, we disagree with the State's attempt to analogize this case to State v. Ramos, 149 N.H. 272 (2003), in which we concluded, on appeal from a trial on charges of burglary and aggravated felonious sexual assault, that it was not reversible error for the trial court to fail to instruct the jury on the defendant's proposed consent theory of defense. Ramos, 149 N.H. at 272, 276. We stated, "[a]s the trial court correctly realized, if the jury found the State proved all elements of the charged variant of aggravated felonious sexual assault, it would have to find the victim did not consent." Id. at 276. Here, by contrast, if the jury found the State proved all elements of first degree assault with a deadly weapon, it would have found only that the defendant committed the assault with his fist "which, in the manner it [was] used, . . . is known to be capable of producing death or serious bodily injury." RSA 625:11, V (emphasis added). As noted above, that finding does not compel a further finding that the defendant committed the assault, "which he kn[ew] to create a substantial risk of causing death or serious bodily injury," RSA 627:9, II (emphasis added); in other words, it does not compel a finding that the defendant acted with deadly force. For the foregoing reasons, we conclude that the trial court unsustainably exercised its discretion in refusing to instruct the jury on non-deadly force self-defense. See Gingras, 162 N.H. at 640.

Reversed and remanded.

DALIANIS, C.J., and HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.

**Eileen Fox,**
**Clerk**