24CA0785 Peo v Gonzalez 06-04-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0785
Douglas County District Court No. 22CR353
Honorable Ryan J. Stuart, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Alfredo Manuel Gonzalez,

Defendant-Appellant.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE J. JONES
Fox and Dunn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 4, 2026

---

Philip J. Weiser, Attorney General, Yaried A. Hailu, Assistant Attorney General
Fellow, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Kira L. Suyeishi, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Alfredo Manuel Gonzalez, appeals the district court's judgment of conviction entered on jury verdicts finding him guilty of felony menacing, third degree assault (knowing/reckless), prohibited use of a weapon (under the influence), and two counts of disorderly conduct (discharge of a firearm in public and fighting in public).  We affirm in part, reverse in part, and remand for correction of the mittimus.

## I.    Background

¶ 2    One evening, Gonzalez went to a bar and had a conversation with John Kilgore, a fellow bar patron.  A while later, Coreen Penniman — a woman Gonzalez had dated — arrived at the bar and sat with Kilgore.

¶ 3    Gonzalez made a few comments about Penniman — some positive and some negative — which eventually struck a nerve.  Penniman told Gonzalez that she wanted to be left alone and never wanted to talk to him again.  A short while later, Gonzalez and Kilgore had a tussle in the men's bathroom after Gonzalez made another comment about Penniman.

¶ 4    The bar's staff and patrons escorted Gonzalez and Kilgore out of the building and into the parking lot.  Security camera footage

1

shows Gonzalez getting into his Jeep, Kilgore starting to approach the Jeep, and Gonzalez getting out and walking towards Kilgore. Kilgore hit Gonzalez with something. The blow knocked Gonzalez to the ground. When Gonzalez got up, he retrieved a gun from his Jeep, walked toward Kilgore again, and fired six shots into the air. Kilgore and others ran away. Gonzalez fired a seventh shot in Kilgore's direction.

¶ 5       The People charged Gonzalez with attempted first degree murder (with a crime of violence sentence enhancer), felony menacing, third degree assault, prohibited use of a weapon, and two counts of disorderly conduct (discharging a firearm in public and fighting in public).

¶ 6       At trial, Gonzalez argued that he had acted in self-defense. The jury acquitted him of the attempted first degree murder charge, and the lesser included offense of attempted second degree murder, but found him guilty on all other counts. The district court sentenced him to two years in the custody of the Department of Corrections on the felony menacing conviction to run concurrently with a controlling 364-day jail sentence on the other convictions.

## II.   Self-Defense Jury Instruction

### A.   Additional Background

¶ 7    Gonzalez was charged with a crime of violence sentence enhancer under section 18-1.3-406(2)(a)(I)(A), C.R.S. 2025, as to the attempted first degree murder charge because of his alleged use of a firearm during the attempt.  The prosecution tendered a jury instruction defining "deadly weapon" as it related to the sentence enhancer.  The tendered instruction read, "Deadly weapon means a firearm, whether loaded or unloaded."

¶ 8    Defense counsel asked the court to include the full definition of deadly weapon in section 18-1-901(3)(e), C.R.S. 2025: "'Deadly weapon' means: . . . [a] firearm, whether loaded or unloaded; or . . . [a] knife, bludgeon, or any other weapon, device, instrument, material, or substance, whether animate or inanimate, that, in the manner it is used or intended to be used, is capable of producing death or serious bodily injury."

¶ 9    The prosecutor objected, arguing that the deadly weapon definition applied only to Gonzalez's conduct and not Kilgore's and that "[t]he deadly weapon here as charged is the firearm, not Mr. Kilgore's use of a stick," so the other portion of the definition

"doesn't really impact anything." The district court asked, "And is there anything in the defense's proposed self-defense instructions that discuss a deadly weapon where it would need to be defined in that context?" Defense counsel replied, "Not in the self-defense instructions, other than the fact that there's a reasonable element. There's an element of reasonableness that the jury has to determine." But defense counsel argued that whether Kilgore had a deadly weapon was relevant to whether Gonzalez had acted reasonably.

¶ 10　　The district court denied defense counsel's request to provide the jury with the full deadly weapon definition, reasoning that

> [t]he purpose of providing definitions to the jury are to define words or terms used elsewhere in the jury instructions. Here, the term "deadly weapon" is being used to describe the weapon that Mr. Gonzalez used. And therefore, the definition only needs to include that portion of which it applies.
>
> A knife, bludgeon doesn't apply. It isn't alleged that that is what is being used. The defense is free to argue that the weapon that -- that Mr. Kilgore was in possession of . . . a deadly weapon in, I guess, a nonlegal context, just that it's a weapon that is deadly, a nonlegal adjective versus the legal definition of that term. And whether or not it's legally defined as a deadly weapon or not does not provide

4

any additional -- does not assist the jury in any additional way in determining the reasonableness of the conduct.

¶ 11     Along with the prosecution's tendered partial definition of a deadly weapon, the court provided the jury with a special interrogatory related to the attempted murder charge:

> If you find the defendant not guilty of criminal attempt to commit murder in the first degree, and the lesser-included offense of criminal attempt to commit murder in the second degree, you should disregard this instruction and sign the verdict form to indicate your not guilty verdict.
>
> If, however, you find the defendant guilty of criminal attempt to commit murder in the first degree, or criminal attempt to commit murder in the second degree . . . answer the following verdict question on the verdict form:
>
> Did the defendant use, or possess and threaten the use of, a deadly weapon?  (Answer "Yes" or "No").
>
> The defendant used, or possessed and threatened the use of, a deadly weapon only if:
>
> 1. the defendant used, or possessed and threatened the use of, a deadly weapon,
>
> 2. during the attempted commission of murder in the first degree or murder in the second degree, or in the immediate flight therefrom.
>
> After considering all the evidence, if you decide the prosecution has met this burden, you

5

should mark "Yes" in the appropriate place, and have the foreperson sign the designated line of the verdict form.

After considering all the evidence, if you decide the prosecution has failed to meet this burden, you should mark "No" in the appropriate place, and have the foreperson sign the designated line of the verdict form.

## B. Standard of Review and Applicable Law

¶ 12    "[W]e consider jury instructions de novo to determine if they are correct recitations of the law and 'accurately inform[] the jury of the governing law.'" *Garcia v. People*, 2022 CO 6, ¶ 16 (quoting *Riley v. People*, 266 P.3d 1089, 1092 (Colo. 2011)).  If the jury instructions correctly recite the law, "we review a trial court's decision to give those instructions for an abuse of discretion." *Id.* at ¶ 18.

¶ 13    "The instructions given to the jurors should include the rules of law necessary for their guidance in resolving the questions submitted for determination.  However, instructions that are either irrelevant, misleading, or confusing to the jury must be avoided." *People v. Lucero*, 985 P.2d 87, 92 (Colo. App. 1999); *see People v. Alexander*, 663 P.2d 1024, 1032 (Colo. 1983).  Even when instructions are drawn from statutory definitions, "irrelevant

references [are] neither necessary nor desirable." *People v. Miller*, 529 P.2d 648, 650 (Colo. 1974).

## C.    Analysis

¶ 14    We conclude that the district court correctly limited the instruction because Gonzalez's tendered jury instruction with the full definition of "[d]eadly weapon" under section 18-1-901(3)(e) contained information legally irrelevant to the jury's factual determinations.

¶ 15    The court's special interrogatory instruction asked the jury to answer whether *Gonzalez* — not Kilgore — used, or possessed and threatened the use of, a deadly weapon during the attempted commission of murder in the first degree or murder in the second degree.  The court included this special interrogatory only because, if the jury found Gonzalez guilty of attempted first or second degree murder, it would need to determine whether Gonzalez had committed a crime of violence under section 18-1.3-406(2)(a)(I)(A). To satisfy that requirement, the jury would need to determine whether Gonzalez had "used, or possessed and threatened use of, a deadly weapon" during his attempt to commit murder.  *See id.*; *cf. People v. Shockey*, 2026 CO 10, ¶¶ 24-27 (concluding that a jury

7

may find a defendant guilty of murder even if it finds that he didn't use a deadly weapon).  To make that determination, the jury needed to know if a firearm met the legal definition of a deadly weapon because the prosecution alleged that Gonzalez used a firearm during his attempt to commit murder.

¶ 16    The jury didn't need to determine whether Kilgore used a deadly weapon; therefore, it didn't need to determine whether Kilgore's fist, a stick, or a bludgeon was a deadly weapon.[1]  This is so because Kilgore's alleged use of his fist, a stick, or a bludgeon had no legal impact on Gonzalez's affirmative defense: It wouldn't alter the prosecution's burden or entitle Gonzalez to invoke any additional benefit under the law.

¶ 17    Gonzalez contends that the full definition of deadly weapon was relevant to his self-defense argument because, absent that full definition, the district court "impermissibly selected the salient points in the evidence" by drawing "attention to the fact that Gonzalez's weapon was deadly, without drawing the same attention to the fact that Kilgore's was as well."  But, again, whether Kilgore

---

[1] The evidence was disputed as to what Kilgore used to hit Gonzalez.

had a deadly weapon as defined for crime of violence purposes was legally irrelevant to whether Gonzalez acted in self-defense. True, the nature of any weapon used by Kilgore was relevant to the *factual* determination of whether Gonzalez had acted reasonably. But the nature of Kilgore's "weapon" had no independent legal significance.

¶ 18    Gonzalez also contends that, because the court limited the jury instruction defining deadly weapon to a firearm, the jury "likely construed this to mean that, under Colorado law, *only* firearms qualify as deadly weapons." But this contention is mere speculation. More importantly, for the reasons discussed, it is irrelevant. Whether Kilgore possessed a deadly weapon had no legal relevance to whether Gonzalez acted in self-defense.

¶ 19    The cases Gonzalez relies on in support of his position are unpersuasive.

¶ 20    In *People v. Toler*, 981 P.2d 1096 (Colo. App. 1998), *aff'd*, 9 P.3d 341 (Colo. 2000), a division of this court reversed the defendant's conviction because the district court had improperly instructed the jury on the duty to retreat. *Id.* at 1098. It then said that because "the supreme court has recognized that fists can be

9

deadly weapons if, in the manner they are used or intended to be used, they are capable of producing death or serious bodily injury," the court should instruct the jury accordingly in the event of a new trial. *Id.* at 1099. Given that the defendant claimed that he had acted in self-defense because he thought the victim was reaching for a gun, *id.* at 1097, it is unclear how anyone's fists bore on any issue in the case. Indeed, the division's analysis of the issue was cryptic and perfunctory. To the extent it could be read as supporting the broad proposition that a jury should be instructed on whether, for the purposes of self-defense, the victim had what the law defines as a deadly weapon, we decline to follow it. *See People v. Smoots*, 2013 COA 152, ¶ 21 (a division of the court of appeals isn't bound by the decisions of other divisions), *aff'd sub nom.*, *Reyna-Abarca v. People*, 2017 CO 15.

¶ 21    In *State v. Gingras*, 34 A.3d 659 (N.H. 2011), the court reversed the defendant's convictions because the trial court failed to provide the jury with a complete instruction on the definition of deadly force for a defendant asserting self-defense. The missing portion of the definition provided, "Purposely firing a firearm capable of causing serious bodily injury or death in the direction of

10

another person or at a vehicle in which another is believed to be constitutes deadly force." *Id.* at 662 (quoting N.H. Rev. Stat. Ann. § 627:9(II) (2007)). The court reasoned that because the defendant had allegedly raised his firearm at the victim without firing his gun, a reasonable jury could have concluded that simply raising the firearm, without firing, was nondeadly force. *Id.* at 663-64. The omitted portion of the instruction therefore was legally relevant to the *defendant's* conduct. In this case, however, the omitted portion of the deadly weapon definition wasn't legally relevant to Gonzalez's conduct.

¶ 22    The court properly instructed the jury on the elements of self-defense, and Gonzalez doesn't contend otherwise. And Gonzalez's counsel was free to argue that Gonzalez's conduct was reasonable because of Kilgore's conduct, including Kilgore's use of a fist, a stick, or a bludgeon, and did so. What Gonzalez wasn't entitled to was an instruction defining a deadly weapon based on a statute irrelevant to self-defense.

¶ 23    In sum, we conclude that the district court didn't abuse its discretion.

## III. Illegal Sentence

¶ 24    Gonzalez also contends — and the People concede — that the district court erred by sentencing him to six months in county jail on his conviction for disorderly conduct (fighting in public) because the maximum sentence for a petty offense is ten days.  *See* § 18-1.3-503(1.5), C.R.S. 2025.  We agree and remand for correction of the mittimus.

## IV. Disposition

¶ 25    We reverse the portion of the district court's judgment sentencing Gonzalez to six months for disorderly conduct (fighting in public) and remand for correction of the mittimus.  We affirm the district court's judgment in all other respects.

JUDGE FOX and JUDGE DUNN concur.