Hillsborough-southern judicial district
No. 2002-297

## THE STATE OF NEW HAMPSHIRE

v.

## GREGG HULL

Argued: May 8, 2003
Opinion Issued: July 21, 2003

*Peter W. Heed*, attorney general (*Laura E. B. Lombardi*, assistant attorney general, on the brief and orally), for the State.

*Robert J. Moses*, of Amherst, by brief and orally, for the defendant.

NADEAU, J. The defendant, Gregg Hull, appeals his convictions for driving under the influence of liquor (DUI), third offense, *see* RSA 265:82 (Supp. 2002); RSA 265:82-b, II(b) (Supp. 2002), and felony reckless conduct, *see* RSA 631:3 (1996), following a jury trial in the Superior Court (*Hicks*, J.). On appeal, he argues that the trial court erred by: (1) denying his motion *in limine* to exclude his prior Massachusetts conviction for operating under the influence of intoxicating liquor (OUI); (2) denying his motion to dismiss the charges for insufficient evidence; (3) denying his motion to set aside the reckless conduct verdict because his car was not a deadly weapon; and (4) denying his motion to set aside the reckless conduct verdict on double jeopardy grounds. We affirm.

The jury could have found the following facts. While driving on the Charles Bancroft Highway on April 22, 2001, the defendant struck Litchfield Police Officer Paul Paquette, from behind, with the mirror of his Ford pickup truck. The contact occurred while the officer was issuing a speeding ticket to another driver. The other driver heard the defendant's truck hit the officer, saw the officer holding his shoulder as the truck tail lights passed, and heard the officer say he had been hit by the truck. The officer then called another unit to report he had been struck by a Ford pickup truck and pursued the truck to issue a citation.

Officer Paquette pulled the truck over approximately one mile from the spot where he had stopped the first driver for speeding. The officer told the defendant he had struck him with his truck and asked the defendant for his license and registration. The officer smelled a distinct odor of alcohol on the defendant's breath and noticed that he slurred his speech. When the officer asked the defendant how much he had to drink he replied that he had not been drinking. The officer then asked the defendant to perform field sobriety tests (FST), to which the defendant agreed.

By the time the defendant got out of the truck, Officer Dwyer had arrived. Both officers smelled alcohol on the defendant and observed that his eyes were red and bloodshot, his speech was slurred, he was unsteady on his feet, and he swayed as he tried to stand still. The defendant performed poorly on the walk-and-turn and the one-legged stand FSTs. Officer Paquette then read the defendant his administrative license suspension rights (ALS) and requested that he take a breathalyzer test. The defendant refused and Officer Paquette arrested him for drunk driving.

While Officer Paquette took the defendant to the station, Officer Dwyer stayed with the defendant's truck until the tow truck came. While he was waiting, he examined the passenger side mirror and found that it was pushed in toward the vehicle, had fresh scuff-marks and was missing the dirt that covered the rest of the truck.

The defendant had a 1999 DUI conviction in New Hampshire and a 1995 OUI conviction in Massachusetts. Prior to trial, the defendant moved *in limine* to exclude evidence of his OUI conviction in Massachusetts, arguing it was not a "reasonably equivalent offense" to the New Hampshire DUI offense. *See* RSA 265:82-b, II. The trial court denied the defendant's motion. At trial, the defendant moved to dismiss both indictments at the close of the State's case. The trial court denied this motion too, finding that the evidence on each charge was sufficient to be submitted to the jury. After trial, the jury returned a guilty verdict on each indictment, which the defendant moved to set aside for violating double jeopardy and for being based upon insufficient evidence. Once again, the trial court denied these motions. This appeal followed.

## I. Denial of Motion in Limine

The defendant argues the trial court should have excluded his prior Massachusetts conviction.

RSA 265:82-b, II provides:

> Upon conviction of any offense under RSA 215-A:11, RSA 265:82, or RSA 265:82-a, based on a complaint which alleged that the person has had one or more prior convictions under [those statutes], or RSA 630:3, II, *or under reasonably equivalent offenses in an out-of-state jurisdiction,* within 10 years . . . , the person shall be subject to the following penalties . . . :
> (a) For a second offense:
> (1) The person shall be guilty of a misdemeanor.
> (2) The person shall be fined not less than $500.

(3) The person shall be sentenced to a mandatory sentence of not less than 10 consecutive days ... in the county correctional facility ....

. . . .

(b) For a third offense, any person convicted under this paragraph shall be subject to all the penalties of subparagraph (a) except that:

(1) The person's driver's license or privilege to drive shall be revoked indefinitely and shall not be restored for at least 5 years.

. . .

(Emphasis added.) The defendant argues that because the New Hampshire and Massachusetts offenses have different elements of proof and are subject to significantly different punishments, they are not "reasonably equivalent" under RSA 265:82-b, II.

We are the final arbiter of the legislature's intent as it is expressed in the words of a statute considered as a whole. *State v. Rollins-Ercolino*, 149 N.H. 336, 339 (2003). Our task is to construe the Criminal Code provisions according to the fair import of their terms and to promote justice. *Id.* In doing so, we first look to the plain language of the statute to determine legislative intent. *Id.* When the statutory language is subject to more than one reasonable interpretation, we examine the nature of the offense and the policy considerations for punishing the conduct in question. *Id.*

Neither the legislature nor this court has defined what constitutes a "reasonably equivalent offense" for sentencing purposes under our Criminal or Motor Vehicle Codes. In a different context, the department of safety has adopted a test of "making a comparison of the elements of the New Hampshire statute to the elements of the other jurisdiction's statute. The text of the elements of the law of the other jurisdiction shall be analogous but not necessarily exactly the same as the elements of the statutes [in New Hampshire]." N.H. ADMIN. RULES, Saf-C 5502.01 (registration of sexual offenders).

Other jurisdictions addressing whether offenses are "reasonably equivalent," "substantially similar" or "like offenses" for subsequent offense or recidivist sentencing provisions apply similar tests to that articulated by the department of safety. *See, e.g., Com. v. Corbett*, 663 N.E.2d 259, 262-63 (Mass. 1996) (like offenses); *Walter v. North Dakota State Highway Com'r*, 391 N.W.2d 155, 159-60 (N.D. 1986) (equivalent offenses); *Com. v. Shaw*, 744 A.2d 739, 743-44 (Pa. 2000) (equivalent offenses); *Cox v. Com.*, 411 S.E.2d 444, 445-46 (Va. Ct. App. 1991) (substantially similar offenses).

■ While the tests applied in other jurisdictions differ, one common factor is whether the evidence required to sustain a conviction for the out-of-state jurisdiction's offense would necessarily sustain a conviction under the home state's statute. If the answer to this question is "yes," the offense is an "equivalent offense" for sentencing enhancement purposes. *See, e.g., Corbett,* 663 N.E.2d at 263; *Walter,* 391 N.W.2d at 160. If the answer to this question is "no," the offenses are not "equivalent." *See, e.g., Shaw,* 744 A.2d at 744-45; *Cox,* 411 S.E.2d at 446. The language of the elements of the statutes need not be identical, because the purpose of subsequent offender laws is to prohibit and punish a specific type of recurring conduct by imposing an enhanced sentence. *Cf. State v. Cardin,* 129 N.H. 137, 138 (1987). The prior offense is not an additional element of the present charge. *See id.*

We find the rationale applied in other States to be persuasive and consistent with the test articulated by the department of safety. Accordingly, we will look to the elements of the New Hampshire and Massachusetts offenses to determine if they are reasonably equivalent offenses for sentence enhancement under RSA 265:82-b.

The New Hampshire DUI statute, under which the defendant was indicted, provides:

> I. No person shall drive or attempt to drive a vehicle upon any way:
>     (a) While such person is under the influence of intoxicating liquor . . . .

RSA 265:82, I(a). The Massachusetts OUI statute, under which the defendant was convicted in 1995, provides:

> (1) (a) (1) Whoever, upon any way . . . operates a motor vehicle while under the influence of intoxicating liquor . . . shall be punished by a fine of not less than five hundred nor more than five thousand dollars or by imprisonment for not more than two and one-half years, or both such fine and imprisonment.

Mass. Gen. Laws Ann. ch. 90, § 24 (1) (a) (1) (West 2001).

To convict the defendant in Massachusetts, the Commonwealth was required to prove beyond a reasonable doubt that the defendant: (1) operated a motor vehicle; (2) on any way; (3) while under the influence of intoxicating liquor. *See Corbett,* 663 N.E.2d at 263. Likewise, in New Hampshire, the provision under which the defendant was indicted required the State to prove beyond a reasonable doubt that the defendant: (1) drove or attempted to drive a vehicle; (2) on any way; (3) while under the influence of intoxicating liquor. *See State v. Tarantino,* 140 N.H. 523,

524 (1995). The only difference between these provisions is in the language "operates a motor vehicle," *see* Mass. Gen. Laws Ann. ch. 90, § 24 (1) (a) (1), and "drive a vehicle," *see* RSA 265:82, I.

Our legislature has defined "'Driv[ing],' in all its moods and tenses, [to] mean to operate or be in actual physical control of a motor vehicle . . . ." RSA 259:24 (1993). Similarly, the Massachusetts Supreme Judicial Court includes "the driving of the vehicle" as one of the ways to "operate" a motor vehicle under Mass. Gen. Laws Ann. ch. 90, § 24. *See Com. v. Ginnetti*, 508 N.E.2d 603, 604 (Mass. 1987). Each definition encompasses its counterpart within its terms. We have never drawn a distinction between the terms "operate" and "drive" for purposes of sentencing for subsequent offenses under our DUI statutes. *See State v. Martel*, 124 N.H. 544, 545 (1984). We see no need to do so now.

While the defendant attempts to make other distinctions between the Massachusetts and New Hampshire statutes, we find them to be distinctions that make no difference because of the statute under which the defendant was charged. Our statute recognizes two distinct offenses. *See* RSA 265:82 (1993 & Supp. 2002). The first, with which the defendant is charged, is driving under the influence of alcohol or drugs. *See* RSA 265:82, I(a). The second is driving with an excess alcohol concentration. *See* RSA 265:82, I(b) (Supp. 2002). Because the defendant is not charged with driving with an excess alcohol concentration, we need not decide whether the Massachusetts OUI offense is reasonably equivalent to that offense.

Likewise, that a first offense in Massachusetts is a misdemeanor, but in New Hampshire a violation, does not affect our analysis. *See Com. v. Valiton*, 737 N.E.2d 1257, 1263 (Mass. 2000); *Corbett*, 663 N.E.2d at 263; *see also Cardin*, 129 N.H. at 138. The punishment imposed for the earlier offense and its classification under the Criminal Code do not affect the ultimate issue, which is whether the prohibited criminal conduct actually occurred for a third time. *See Corbett*, 663 N.E.2d at 263.

■ In sum, we find that the conduct for which the defendant was convicted in Massachusetts would necessarily sustain a conviction for DUI here. Therefore, we hold that these two statutes constitute "reasonably equivalent offenses" for sentencing purposes and the trial court properly denied the defendant's motion *in limine*.

## II. Sufficiency of the Evidence

The defendant next argues that the trial court erred in denying his motion to dismiss the indictments at the close of the State's case and in failing to set aside the jury verdict based upon sufficiency of the evidence. Because the defendant chose to present a case after unsuccessfully moving

to dismiss, however, the issue on appeal as to both motions is the sufficiency of the evidence and we review the entire trial record to make that determination. *See State v. Pittera,* 139 N.H. 257, 260 (1994).

The defendant's appeal raises two separate sufficiency arguments. First, he argues that the State failed to present evidence of intoxication to support the DUI conviction. Second, he argues that the State failed to prove he acted in a reckless manner, or even that he was driving the vehicle that hit Officer Paquette, to support the felony reckless conduct indictment.

To prevail on a challenge to the sufficiency of the evidence, the defendant must prove that no rational fact finder at trial, viewing all of the evidence presented in the light most favorable to the State, could have found guilt beyond a reasonable doubt. *State v. Looney,* 148 N.H. 656, 657 (2002). When the challenged evidence of an element of the charged offense is circumstantial, the evidence must exclude all rational conclusions except guilt. *Id.* Under this standard, however, we still consider the evidence in the light most favorable to the State, and we examine each evidentiary item in the context of all of the evidence, not in isolation. *Id.*

■ Reviewing the trial record, we hold that a rational fact finder viewing the evidence in the light most favorable to the State could have found beyond a reasonable doubt that the defendant was intoxicated. In addition to the testimony of two police officers that the defendant smelled of alcohol, had slurred speech, blood shot eyes, swayed while standing, and performed poorly on field sobriety tests, the State presented testimony that the defendant refused to take a blood alcohol test. *See* RSA 265:88-a (1993). While the defendant testified that he was not intoxicated and performed well on the field sobriety tests, he also testified that he had three beers that evening. The jury was free to accept or reject any portion of this testimony in their deliberations. *See State v. Baker,* 135 N.H. 447, 450 (1992). When there is conflicting factual testimony, we defer to the findings of the jury unless no reasonable person could have come to the same conclusion. *Id.*

To achieve a conviction for reckless conduct, the State was required to prove the defendant "recklessly engaged in conduct which placed or may have placed another in danger of serious bodily injury. The defendant committed this crime by driving a vehicle . . . too close to Paul Paquette and, in so doing, striking Paul Paquette with part of the vehicle." The State also had to prove beyond a reasonable doubt that "the defendant was aware of and consciously disregarded a substantial and unjustifiable risk that serious bodily injury would result from the charged conduct." *State v. McCabe,* 145 N.H. 686, 689 (2001) (quotation and brackets omitted). The

defendant argues that there was no evidence that he was driving the vehicle that struck Officer Paquette or that he acted in a reckless manner. We disagree.

Both Officer Paquette and the independent motorist testified that a vehicle hit Officer Paquette from behind as he was issuing the driver a ticket. The record further reflects that, while other traffic was on the road, a Ford truck was the vehicle in the immediate area driving away from the scene. Indeed, even the defendant testified that as he approached, he saw the police officer with a vehicle pulled over and he had to move his vehicle into oncoming traffic to get around the officer's cruiser. The record shows that Officer Paquette immediately pursued the defendant's truck, stopping it within a mile of his initial traffic stop. Finally, Officer Dwyer testified that the defendant's exterior truck mirror, which extended away from the truck's body, was pushed inward and wiped clean of the dirt covering the rest of the vehicle, consistent with being hit or pushed against an object.

Although this evidence is circumstantial, when examined with all of the evidence and in the light most favorable to the State, the evidence excludes all rational conclusions except that the defendant was driving the vehicle that struck Officer Paquette. *Cf. Tarantino*, 140 N.H. at 524-25.

To prove the defendant acted in a reckless manner, the State had to show that the defendant was aware of but consciously disregarded a substantial, unjustifiable risk that serious bodily injury would result from his conduct. *See McCabe*, 145 N.H. at 689. In addition, the State had to show that the defendant's disregard for the risk of injury to another was a gross deviation from the regard that would be given by a law-abiding citizen. *See State v. Evans*, 134 N.H. 378, 385 (1991).

This is a subjective inquiry. *Id.* It does not depend upon the actual harm resulting from the defendant's conduct. *Id.* at 385-86. Nor does it depend upon whether the defendant anticipated the precise risk or injury that resulted. *Id.* at 386. Rather, the jury had to find that the defendant's driving too close to a police officer engaged in a traffic stop involved a substantial and unjustifiable risk of injury to either Officer Paquette or the driver of the other vehicle. *See id.* Then the jury had to find that the defendant's conduct in creating that risk was a gross deviation from that of a law-abiding person, because that person would not have driven so close to the officer. Because determination of the defendant's awareness is a subjective inquiry, it may be proven by any surrounding facts and circumstances from which such awareness may be inferred. *See id.* at 387. The jury could have considered the defendant's conduct before and after the accident, including his testimony that he had been drinking. *See id.* The jury also could have disregarded any explanation given for his conduct if they questioned the defendant's credibility. *See id.*

■ A rational jury could conclude from the evidence that the defendant's conduct was a gross deviation from that of a law-abiding citizen, because a law-abiding citizen would have waited for traffic to pass to avoid driving too close to a police officer engaged in a traffic stop. Likewise, a rational jury could conclude that driving too close to a police officer engaged in a traffic stop created a substantial, unjustifiable risk of injury to either the police officer or the other driver. *Cf. State v. Pelky,* 131 N.H. 715, 719 (1989) (finding that indictment stating a defendant drove car too close to fog line, hit bicyclist riding near fog line, and caused bicyclist bodily injuries adequately stated element of recklessness for second degree assault). Finally, a rational jury could conclude that if the defendant was unaware of the risk he created, it was due to his own voluntary intoxication. *See* RSA 626:2, II (c) (1996). Accordingly, we hold that the trial court properly denied the defendant's motions to dismiss and to set aside the verdict.

*III. Denial of Motion to Set Aside Reckless Conduct Verdict Based Upon Use of Automobile as a Dangerous Weapon*

The defendant next argues that there was no proof beyond a reasonable doubt that he used his vehicle in a manner that would cause it to become a deadly weapon. "Reckless conduct is a class B felony if the person uses a deadly weapon as defined in RSA 625:11, V. All other reckless conduct is a misdemeanor." RSA 631:3, II (1996). The defendant argues that the trial court's denial of his motion to set aside the felony reckless conduct verdict makes any reckless driver of a vehicle guilty of felony reckless conduct.

A deadly weapon as defined in RSA 625:11, V (1996) is "any firearm, knife or other substance or thing which, in the manner it is used, intended to be used, or threatened to be used, is known to be capable of producing death or serious bodily injury." The critical phrase is "the manner [in which an object] is used, intended to be used, or threatened to be used, [it] is known to be capable of producing death or serious bodily injury." Many innocuous everyday objects become deadly weapons when they are put to assaultive uses. It is only the specific manner of use and the circumstances surrounding that use that make such everyday objects capable of producing death or serious bodily injury. *See, e.g., In re Justin D.,* 144 N.H. 450 (1999) (multiple rolls of reinforced coins become dangerous weapons when swung at someone's head); *State v. Kiluk,* 120 N.H. 1 (1980) (dinner fork becomes a deadly weapon when it is used to stab someone in the eye); *State v. Piper,* 117 N.H. 64 (1977) (belt buckle becomes dangerous weapon when blade is attached and it is swung at someone). For this reason, the issue is factual and must be resolved by a jury.

Furthermore, whether a motor vehicle driven in a reckless manner is a deadly weapon is a question of fact for the jury based upon the totality of the circumstances. We have never required that an object be intrinsically capable of causing death or injury. *Cf. State v. Hatt*, 144 N.H. 246, 247-48 (1999). Nor have we required that an object actually cause death or injury. *Cf. id.* Not all persons who drive recklessly under RSA 265:79 (1993) are necessarily guilty of using their automobile as a deadly weapon. For example, when finding that a defendant did not use his truck as a deadly weapon while committing a felony driving while intoxicated offense on an empty highway, the Texas Court of Appeals explained:

> To determine whether in the manner of its use or intended use [the defendant's] truck was "capable" of causing death or serious bodily injury, that "capability" must be evaluated in light of the facts that actually existed while the [crime] was committed. In other words, the "capability" must be evaluated in light of what did happen rather than the conjecture about what *might* have happened if the facts had been different than they were.

*Williams v. State*, 946 S.W.2d 432, 435 (Tex. Ct. App. 1997). We agree with this analysis.

■ In contrast to the defendant in *Williams*, the defendant in the instant case drove his truck so close to a police officer engaged in a traffic stop that he hit the police officer in the shoulder. Additionally, the defendant testified that he drove into oncoming traffic to go around the police car. Finally, the jury found that the defendant was driving while intoxicated. Under these circumstances, we hold that a reasonable jury could find that the defendant's truck, in the manner in which it was used, was known to be capable of causing death or serious bodily injury to Officer Paquette, to the driver already pulled over or even to the occupants of oncoming vehicles. *Cf. Davis v. State*, 964 S.W.2d 352, 354 (Tex. Ct. App. 1998).

While the defendant invites us to create classifications for deadly weapons under RSA 625:11, V, *cf. State v. Riley*, 703 A.2d 347, 350-51 (N.J. Super. Ct. App. Div. 1997), we decline the invitation. *See Hatt*, 144 N.H. at 247-48.

*IV. Denial of Motion to Set Aside Reckless Conduct Verdict Based Upon Double Jeopardy*

Finally, the defendant argues that his two convictions violate double jeopardy under the State Constitution, *see* N.H. CONST., pt. I, art. 16, because the State required the same evidence to prove the DUI and

reckless conduct charges in this case. The defendant argues the trial court erroneously applied the rationale of *State v. MacLeod*, 141 N.H. 427, 429 (1996), in denying his motion to set aside the felony reckless conduct verdict. We confine our analysis to the State Constitution because the defendant makes no federal constitutional claim. *See State v. McKean*, 147 N.H. 198, 199-200 (2001).

In *MacLeod*, we comprehensively explained our constitutional analysis for evaluating double jeopardy claims:

> The double jeopardy clause of the New Hampshire Constitution protects a defendant from multiple punishments for the same offense. Two offenses will be considered the same unless each requires proof of an element that the other does not. Thus, multiple indictments are permissible only if proof of the elements of the crimes *as charged* will in actuality require a difference in evidence. The ultimate question is whether the facts charged in the second indictment, would, if true, have sustained the first. As these formulations of the relevant inquiry make clear, we review and compare the statutory elements of the charged offenses in light of the actual allegations contained in the indictments.

*Id.* at 429 (citations and quotations omitted). The trial court properly looked to this standard when addressing the defendant's motion.

Applying the principles from *MacLeod*, we conclude that proof of the elements of the crimes as charged require different evidence in actuality as well. The statutory offense of DUI, read in light of the applicable indictment, required the State to prove that the defendant, while under the influence of intoxicating liquor, drove a vehicle on a way known as the Charles Bancroft Highway in Litchfield. *See* RSA 265:82, I (a). The felony reckless conduct statute, read in light of the applicable indictment, required the State to prove that the defendant recklessly engaged in conduct which placed another in danger of serious bodily injury, and that he did so by driving a vehicle too close to Officer Paquette, striking Officer Paquette with part of the vehicle. *See* RSA 631:3.

Proof of the elements of either of these crimes as charged could not sustain a conviction on the elements of the other crime. The DUI indictment required evidence of intoxication to sustain a conviction; the reckless conduct indictment did not. The reckless conduct indictment required proof that the defendant drove his truck too close to Officer Paquette and that he struck the officer with his truck; the DUI indictment did not. While the State may have used evidence of the defendant's intoxication to prove recklessness and may have used evidence of the

defendant driving too close to the police officer to prove intoxication, such evidence was not required to prove the elements of the indictments as charged. *See MacLeod,* 141 N.H. at 429-30.

■ ■ It does not matter how overlapping, reciprocal, or similar the evidence used to sustain the indictments was if a difference in evidence is actually required to prove the crime charged. *See McKean,* 147 N.H. at 201-02. For the same reason, it does not matter that the two charges arose out of the same transaction. *See id.* The evidence required to prove the DUI indictment could not have sustained the reckless conduct indictment as charged. Therefore, we hold that the defendant's convictions for the two offenses as charged do not offend double jeopardy.

*Affirmed.*

DALIANIS and DUGGAN, JJ., concurred.