NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2012-572

THE STATE OF NEW HAMPSHIRE

v.

CHAD BELLEVILLE

Argued: October 17, 2013
Opinion Issued: February 11, 2014

Michael A. Delaney, attorney general (Diana E. Fenton, assistant attorney general, on the brief and orally), for the State.

David M. Rothstein, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

CONBOY, J. The defendant, Chad Belleville, appeals his conviction for second degree assault following a bench trial in Superior Court (O'Neill, J.), arguing that the State presented insufficient evidence to prove that he acted recklessly. See RSA 631:2 (2007) (amended 2010). We affirm.

The court could have found the following facts. The defendant's conviction stems from a motor vehicle accident that seriously injured the child of another motorist, which occurred on December 23, 2010, at approximately 9:15 p.m. on Route 28 near Pittsfield. The section of Route 28 where the

accident occurred contains three travel lanes: (1) a northbound travel lane; (2) a median turning lane measuring approximately the width of two lanes and set off from the travel lanes by two sets of solid double yellow lines; and (3) a southbound travel lane. The defendant was driving southbound in a Ford Explorer, a sport utility vehicle (SUV). Corey Pickering was driving in the opposite direction, in the northbound lane, followed by a Subaru occupied by Tressa Flanders (Flanders), who was in the front passenger seat, Flanders' husband, who was driving, and their son (the victim) and two daughters, who were in the back seat. Behind the Flanderses' vehicle was a Honda driven by Evan Welch. It was dark and the weather was dry, clear, and cold.

Just before the accident, Pickering observed the defendant's SUV, traveling in the opposite direction, drifting into the median lane. The SUV came within inches of Pickering's driver's side mirror and Pickering had to swerve his vehicle to avoid being hit. Pickering then saw in his rearview mirror that the SUV hit the Flanderses' Subaru.

Prior to the collision, Flanders saw headlights from an oncoming vehicle and yelled to her husband to "watch out." Her husband tried to swerve to avoid being hit, but the oncoming vehicle hit the driver's side of their car. Welch saw the Subaru "fishtail[] really suddenly" and saw its back end "explode into a lot of pieces." He then saw "headlights coming straight at [him]" and within a couple of seconds, the SUV hit his vehicle. Welch skidded into the passenger side of the Subaru and both vehicles came to a stop on the side of the road. The SUV "traveled across a small field" and came to rest alongside the road.

Immediately after the collision, Flanders "saw a gaping hole" in the back of the Subaru on the driver's side and noticed that her son was no longer in the vehicle. She climbed out of the vehicle, made sure that her daughters and her husband were not seriously injured, and then looked for her son. She located him lying "in a cradled position." As a result of the accident, her son sustained a traumatic brain injury, loss of "his left eye socket," and dislocation and fracture of his jawbone.

When Sergeant Matthew Shapiro of the New Hampshire State Police arrived at the scene, he asked the defendant whether he had made any telephone calls "either just prior to the collision or just after the collision." The defendant told Shapiro that he had telephoned his girlfriend after the collision to tell her what had happened. Shapiro asked to look at the defendant's cellular telephone to ascertain what time that call had been made. The defendant showed Shapiro his call history and Shapiro noticed that no calls were shown as having been made before the accident. Shapiro testified that he asked the defendant about the history of calls that had occurred prior to the

collision and the defendant told him that he thought he had "erased the history or something."

Shortly thereafter, Sergeant David Scott McCormack of the New Hampshire State Police arrived at the scene. He spoke with the defendant, who told him that he could not recall what had happened. Approximately eight months later, on August 7, 2011, McCormack again spoke with the defendant. During their conversation, the defendant admitted that, at the time of the accident, he was checking a text message. He stated that he did not see the Subaru and that, "I just looked down and the next thing you know I crashed."

McCormack and other law enforcement officers conducted reconstruction analysis and a post-collision inspection of the defendant's Ford Explorer. It was determined that there was no mechanical problem with the vehicle that would have led to the collision. Furthermore, based upon his investigation, McCormack opined that the cause of the collision was that the defendant was traveling "southbound on Route 28 in a Ford Explorer when he crossed two sets of double yellow lines and struck the Flanderses' vehicle and the Welch vehicle that were operating within their lane northbound." He noted that there was no evidence that the defendant had either braked or taken any evasive action to avoid the vehicles prior to the collision.

The defendant was charged with one count of second degree assault for recklessly causing serious bodily injury to another by "cross[ing] over two sets of double solid lines through a turning lane and into the northbound lane, causing a collision with oncoming motor vehicles." See RSA 631:2. He was also charged with one count of vehicular assault for negligently causing serious bodily injury to another based upon his failure "to pay due attention" while operating a motor vehicle and crossing "double solid yellow lines, causing a collision with oncoming vehicles." See RSA 265:79-a (2004), stricken in part as unconstitutional by State v. Rollins-Ercolino, 149 N.H. 336, 343 (2003).

The accident occurred at approximately 9:15 p.m. At trial, the State introduced the records of the defendant's cellular telephone activity from 8:50 p.m. to 9:25 p.m. The records disclosed that the defendant received at least two text messages between 8:51 p.m. and 9:04 p.m. They also established that the defendant made and received calls between 8:53 p.m. and 9:05 p.m. The records showed no calling or messaging activity between 9:05 p.m. and 9:18 p.m.; thus, the records were consistent with the defendant's admission that, at the time of the accident, he was checking a text message.

At the close of all of the evidence, the defendant moved to dismiss the charges on the ground that the evidence was insufficient to prove that his conduct was either criminally negligent or reckless. The court denied the motion and found him guilty of both charges. This appeal followed.

3

The defendant argues that the trial court erred in finding him guilty of second degree assault because the evidence was insufficient to prove that he acted recklessly. Although, in his brief, the defendant also argues that the trial court erred in finding him guilty of acting negligently, at oral argument, he conceded that his conduct was criminally negligent. We, therefore, limit our analysis to whether the evidence was sufficient to prove that the defendant acted recklessly.

To prevail upon his challenge to the sufficiency of the evidence, the defendant must prove that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. State v. Shepard, 158 N.H. 743, 746 (2009). "Because persons rarely explain to others the inner workings of their minds or mental processes, a culpable mental state must, in most cases[,] be proven by circumstantial evidence." State v. Tayag, 159 N.H. 21, 24 (2009) (quotation and ellipsis omitted). When the evidence as to one or more of the elements of the charged offense is solely circumstantial, it must exclude all reasonable conclusions except guilt. State v. Germain, 165 N.H. 350, 360 (2013). Under this standard, however, we still consider the evidence in the light most favorable to the State and examine each evidentiary item in context, not in isolation. Shepard, 158 N.H. at 746.

To have convicted the defendant of second degree assault, the State was required to prove, beyond a reasonable doubt, that the defendant "recklessly cause[d] serious bodily injury to another." RSA 631:2, I(a).

> A person acts recklessly with respect to a material element of an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the circumstances known to him, its disregard constitutes a gross deviation from the conduct that a law-abiding person would observe in the situation.

RSA 626:2, II(c) (2007); see State v. Botelho, 165 N.H. ___, ___ (decided December 24, 2013); see also State v. Hull, 149 N.H. 706, 713 (2003) ("To prove the defendant acted in a reckless manner, the State had to show that the defendant was aware of but consciously disregarded a substantial, unjustifiable risk that serious bodily injury would result from his conduct.").

Assessment of criminal recklessness — that is, whether a defendant was aware of the risk of serious bodily injury resulting from his actions, consciously disregarded the risk, and had knowledge of circumstances that made disregarding the risk a "gross deviation" from law-abiding conduct — involves

4

comparing the defendant's conduct with that of a law-abiding person. See State v. Evans, 134 N.H. 378, 385 (1991); see also Hull, 149 N.H. at 713; Model Penal Code § 2.02 cmt. 3, at 237 (Official Draft and Revised Comments 1985). As the comment to the Model Penal Code section defining recklessness explains, when assessing recklessness, the fact-finder should "measure the substantiality and unjustifiability of the risk by asking whether its disregard, given the actor's perceptions, involved a gross deviation from the standard of conduct that a law-abiding person in the actor's situation would observe." Model Penal Code § 2.02 cmt. 3, at 237; see State v. Donohue, 150 N.H. 180, 183 (2003) (recognizing that our Criminal Code is largely derived from the Model Penal Code and explaining that its commentaries are instructive upon our interpretation of analogous New Hampshire statutes).

On the other hand, "[a] person acts negligently with respect to a material element of an offense when he fails to become aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct." RSA 626:2, II(d); see also Shepard, 158 N.H. at 746 ("Criminal negligence requires not only the failure to perceive a more than ordinary risk, but also some serious blameworthiness in the conduct that caused it." (quotation omitted)). Under our Criminal Code, both reckless and negligent conduct must constitute a gross deviation from the conduct of a reasonable person. State v. Cameron, 121 N.H. 348, 351 (1981). However, the difference between recklessness and negligence is that a person is reckless if he is aware of and consciously disregards a substantial risk that a material element of the crime exists or will result from his conduct, whereas one is negligent when he fails to become aware of a substantial risk that an essential element of the crime exists or will result from his conduct. Id. at 350-51.

Whether a defendant acted recklessly does not depend upon the actual harm resulting from his conduct. Hull, 149 N.H. at 713. Nor does it depend upon whether the defendant anticipated the precise risk or injury that resulted. Id.; Evans, 134 N.H. at 385. Such an assessment may include an examination of the "surrounding facts and circumstances from which such awareness may be inferred." Hull, 149 N.H. at 713. Here, the court could have considered the defendant's conduct before and after the accident, including his admission that he was reading a text message at the time of the accident, and soon thereafter erased his telephone's call history. See Hull, 149 N.H. at 713.

Viewing all of the evidence in the light most favorable to the State, we cannot say that no rational trier of fact could have found it sufficient to establish that the defendant acted recklessly. The defendant admitted that he looked down to check a text message on his cellular telephone while driving and stated, "the next thing you know I crashed." During the time he spent looking down at a text message, rather than paying attention to the road, the defendant drove across the median, which was approximately the width of two

lanes and set off from the travel lanes by two sets of solid double yellow lines, and entered into the opposite lane of traffic. A rational trier of fact could have concluded that the risk that another driver would suffer serious injury in this situation was "substantial and unjustifiable." RSA 626:2, II(c); cf. Hull, 149 N.H. at 714 (finding that driving too close to a police officer engaged in a traffic stop created a substantial, unjustifiable risk of injury to either police officer or other driver).

Moreover, a rational trier of fact could have found that looking down to check a text message for the length of time it took to cross over the median, enter into the oncoming travel lane, nearly hit one vehicle, and hit two others, without braking or attempting to evade collision, was a gross deviation from the conduct of a law-abiding citizen, because a law-abiding citizen would not have voluntarily remained inattentive for such an appreciable length of time over such a distance. Cf. State v. Pelky, 131 N.H. 715, 719 (1989) (finding that indictment stating defendant drove car near fog line, hit bicyclist riding near fog line, and caused bicyclist serious bodily injury adequately stated element of recklessness for second degree assault). Likewise, a rational trier of fact could have concluded that the defendant was aware of the risk that looking down to check a text message while driving could cause an accident, and that he chose to disregard that risk. Finally, although not dispositive, a rational trier of fact could have considered the defendant's subsequent conduct of erasing the call history on his telephone as demonstrative of his awareness that diverting his attention from the road and to his telephone while driving risked causing an accident. Cf. Evans, 134 N.H. at 387 (stating that defendant's attempts to deny conduct that led to conviction for second degree assault could lead jury to find defendant's actions were "anything but innocent").

The defendant suggests that a finding that his conduct was reckless would be inconsistent with cases from other jurisdictions "that have found recklessness based on inattention plus aggravating factors." He maintains that "the use of a cell phone may be a factor in assessing criminal liability for reckless . . . operation," but "this case lacks additional aggravating circumstances needed to substantiate" his conviction.

Analyzing distracted driving in a criminal negligence case, we rejected a similar argument that such conduct is not sufficiently blameworthy to be criminal. See State v. Dion, 164 N.H. 544, 549-50, 552 (2013) (concluding that defendant's inattention caused by her use of a cellular phone while driving was sufficient to support conviction for negligent homicide). Moreover, here, the defendant's conduct was not similar to the conduct of the defendant in Shepard, who briefly and "inexplicably drifted" out of his lane and "over the double yellow line" into oncoming traffic on a two-lane highway. See Shepard, 158 N.H. at 747 (holding that defendant's conduct of straying briefly over the yellow line before hitting motorcyclists was insufficient to impose criminal

6

liability).  Rather, the defendant chose to look down at a text message long enough to allow his vehicle to cross nearly three lanes of traffic into the opposite travel lane without returning his attention to the road.  At no time did the defendant brake or take any evasive action.  According to the defendant's own admission, he failed to notice any other vehicles until he struck the Flanderses' vehicle and went on to strike Welch's vehicle.

This was more than a case of momentary inattention, such as might be caused by changing a radio station or sneezing.  See id. at 752 (Broderick, C.J., dissenting).  Here, the defendant chose to divert his attention from the road to check a text message and remained so inattentive that he failed to notice that he crossed nearly three lanes of traffic and entered into the opposite lane in the face of oncoming traffic.  Under these circumstances, we cannot say that a reasonable trier of fact, viewing the evidence and all reasonable inferences from it in the light most favorable to the State, could not have found that the defendant acted recklessly.

Affirmed.

DALIANIS, C.J., and HICKS, LYNN and BASSETT, JJ., concurred.