**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2014-0327, <u>State of New Hampshire v. Jeffrey Guyette</u>, the court on June 19, 2015, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. Following a jury trial in Superior Court (<u>Delker</u>, J.), the defendant was convicted on one count of felony-level reckless conduct with a deadly weapon, RSA 631:3, I, II (2007). On appeal, the defendant argues that the evidence at trial was insufficient to prove that he: (1) acted recklessly; and (2) "used" a firearm as a deadly weapon. We affirm.

The jury could have found the following facts. On December 11, 2012, Hampton Falls Police Officer Lister went to the defendant's home to serve a restraining order on the defendant and his wife. The restraining order, issued in Massachusetts, related to a dispute between the defendant's wife and her family. The order required the defendant to relinquish all firearms and ammunition in his possession.

Upon arriving at the defendant's residence, Lister knocked on the front door. The defendant answered, and the two had a conversation in the breezeway of the residence. As Lister explained the purpose of his visit, he described the defendant as calm, relaxed, and attentive. After Lister told the defendant that he would require the defendant to hand over his firearms and ammunition, the defendant's "mood changed a little bit." The defendant said: "Oh, no. That's going to be a problem." The defendant stated that Lister was violating the defendant's "civil rights," and that he did not need to comply with an order from another state. Lister then requested that Hampton Falls Police Chief Dirsa come to the defendant's residence, because Dirsa knew the defendant.

Once Dirsa arrived, he reiterated what Lister had told the defendant. However, the defendant continued to resist complying with the order. Shortly thereafter, the defendant's wife arrived home and invited the officers inside. After about thirty minutes of discussion, the defendant agreed to give the officers his firearms. The defendant told them that the firearms were in the basement. Lister informed the defendant that he was going to go to the basement with the defendant, to which the defendant replied, "No, you won't." Dirsa explained to the defendant that Lister must accompany him "because I

don't want you to go downstairs and bring a gun back up and shoot me." In response, the defendant "smirk[ed]," but said nothing.

The defendant went down into the basement, followed by Lister and Dirsa. Once downstairs, the defendant walked over to three storage containers stacked on top of one another. As the defendant removed the lid of one container, Lister saw several knives and three handgun cases.

The defendant reached for one of the cases. Lister then instructed the defendant not to touch the case. Both the defendant and Lister placed their hands on the case, and the defendant opened it. As the defendant reached into the case, Lister said, "[D]on't touch the gun." The defendant picked up the firearm. Several times, Lister told the defendant to "put the gun down," but the defendant did not comply. A struggle ensued, with both Lister and Dirsa "grabbing" the defendant. The defendant eventually released the firearm, and was handcuffed. It was later determined that the firearm was loaded and did not have a safety mechanism.

The defendant was charged with one count of reckless conduct with a deadly weapon and one count of criminal threatening. At the close of the State's case, the defendant moved to dismiss, arguing that the evidence presented was insufficient to find him guilty of either charge. The trial court denied the motion. The jury acquitted the defendant of criminal threatening but found him guilty of reckless conduct with a deadly weapon. This appeal followed.

On appeal, the defendant argues that the evidence was insufficient to find him guilty of felony-level reckless conduct with a deadly weapon. Specifically, he argues that the evidence was insufficient to support a finding by the jury either that he acted recklessly or that he "use[d]" a deadly weapon as defined in RSA 625:11, V (2007). The State counters that the officers' testimony was sufficient to prove reckless conduct with a deadly weapon.

"To prevail upon his challenge to the sufficiency of the evidence, the defendant must demonstrate that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt." State v. Belleville, 166 N.H. 58, 61 (2014). "Because persons rarely explain to others the inner workings of their minds or mental processes, a culpable mental state must, in most cases, be proven by circumstantial evidence." Id. at 62 (quotation and brackets omitted). "When the evidence as to one or more of the elements of the charged offense is solely circumstantial, it must exclude all reasonable conclusions except guilt." Id. "Under this standard, however, we still consider the evidence in the light most favorable to the State and examine each evidentiary item in context, not in isolation." Id. Further, "[w]e review the entire trial record because, even though the defendant is not required to

2

present a case, if [he] chooses to do so, [he] takes the chance that evidence presented in [his] case may assist in proving the State's case." State v. Dion, 164 N.H. 544, 548 (2013).

We first turn to the defendant's argument that the evidence was insufficient for the jury to find that he acted recklessly. Under RSA 631:3, I, "[a] person is guilty of reckless conduct if he recklessly engages in conduct which places or may place another in danger of serious bodily injury."

> A person acts recklessly with respect to a material element of an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the circumstances known to him, its disregard constitutes a gross deviation from the conduct that a law-abiding person would observe in the situation.

RSA 626:2, II(c) (2007). Thus, "[t]o prove the defendant acted in a reckless manner, the State had to show that the defendant was aware of but consciously disregarded a substantial, unjustifiable risk that serious bodily injury would result from his conduct." State v. Hull, 149 N.H. 706, 713 (2003). "In addition, the State had to show that the defendant's disregard for the risk of injury to another was a gross deviation from the regard that would be given by a law-abiding citizen." Id. Whether a defendant acted recklessly "does not "depend upon whether the defendant anticipated the precise risk or injury that resulted." Id.

Here, the defendant did not comply with Lister's instructions not to touch the gun case — in fact, the defendant opened the case. Lister then commanded the defendant not to touch the weapon, but the defendant picked up the firearm by its grip. Lister testified that he witnessed the defendant's finger on the trigger and that the defendant's "hand came roughly in [the] fashion like he was going to shoot [the gun]." The defendant then "raised his hands up . . . towards [Lister's] face." Dirsa testified that the defendant raised the firearm "close to shoulder level." Both officers "grabb[ed]" the defendant, yet the defendant still did not surrender the weapon. The officers struggled with the defendant, and had to shake his arm several times before he finally let go of the weapon.

Based upon this evidence, the jury could have found that the defendant's actions created "a substantial, unjustifiable risk that serious bodily injury would result from his conduct." Id. A rational jury could reasonably have concluded that picking up a loaded firearm, which did not have a safety mechanism, and raising it toward two police officers after being instructed not to touch the weapon, created a substantial, unjustifiable risk that the

defendant would shoot the officers or that serious bodily injury would otherwise result from his conduct.

Additionally, the jury could have found that, when the defendant ignored Lister's command not to touch the gun case or the firearm and, instead, raised the firearm toward the officers, he was "aware of but consciously disregarded" this risk. Id. The defendant testified that he heard Dirsa's comment that Dirsa was concerned that the defendant would shoot him. The defendant also testified that he had taken a firearm safety course and that he "presum[es] all firearms are loaded." The defendant further acknowledged that the "best possible thing to do" from a safety standpoint would have been not to touch the firearm at all. Furthermore, of the three firearms that were in the storage container, only the firearm that the defendant picked up was loaded. Although the defendant testified that he was confused as to the manner in which the officers wanted him to relinquish the firearms, and that he did not hear Lister's commands, the jury "could have disregarded any explanation given for his conduct if they questioned the defendant's credibility." Id.

The jury could have also found that a law-abiding citizen would not have raised a loaded firearm in the direction of the officers, and that the defendant's conduct was a "gross deviation from the regard that would be given by a law-abiding citizen." Id. A jury could have concluded that instead of raising the loaded firearm in the direction of the officers, a law-abiding person would have awaited instructions from the officers on how best to proceed. Accordingly, the defendant has failed to demonstrate that no rational trier of fact could have found that he acted recklessly.

The defendant next argues that there was insufficient evidence that he "used" a deadly weapon. "Reckless conduct is a class B felony if the person uses a deadly weapon as defined in RSA 625:11, V." RSA 631:3, II. RSA 625:11, V defines "[d]eadly weapon" as "any firearm, knife, or other substance or thing which, in the manner it is used, intended to be used, or threatened to be used, is known to be capable of producing death or serious bodily injury." RSA 625:11, V. Whether "the defendant used a firearm in such a manner that it constituted a deadly weapon . . . is a question of fact for the jury based upon the totality of the circumstances." State v. Kousounadis, 159 N.H. 413, 425 (2009) (citation omitted).

Here, the defendant argues that "[t]here is no indication in the evidence of any other possible 'use' other than complying with the police request for surrender of the firearm." We disagree. As recounted above, the defendant picked up a loaded firearm by its grip, with his finger on the trigger. He then raised the firearm toward Lister's face despite being repeatedly instructed by the officer to put the firearm down. Based upon this evidence, a rational trier of fact could have concluded that the defendant "intended" or "threatened" to

4

use the firearm in a manner "capable of producing death or serious bodily injury." RSA 625:11, V.

Finally, the defendant argues that, "[w]hen the jury acquitted [the defendant] of Criminal Threatening, the jury itself declared that there was not proof beyond a reasonable doubt that the firearm was used to threaten the police." We disagree. The jury may well have determined that, although the defendant did not have the purposeful mental state required for criminal threatening, he nonetheless acted recklessly. See RSA 631:4, I(a) (2007). If the jury so concluded, the jury could have properly convicted the defendant of reckless conduct with a deadly weapon, and, at the same time, could have acquitted the defendant of criminal threatening.

<u>Affirmed</u>.

DALIANIS, C.J., and HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.

**Eileen Fox,
Clerk**

5