NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Sullivan
No. 2018-0292

THE STATE OF NEW HAMPSHIRE

v.

HENRY CARNEVALE

Argued: September 12, 2019
Opinion Issued: November 26, 2019

Gordon J. MacDonald, attorney general (Susan P. McGinnis, senior assistant attorney general, on the brief and orally), for the State.

Elliott Jasper Auten Shklar & Ranson, LLP, of Newport (Michael C. Shklar on the brief and orally), for the defendant.

HICKS, J. The defendant, Henry Carnevale, appeals his conviction by a jury in Superior Court (Tucker, J.) for felony reckless conduct, see RSA 631:3, I, II (2016), with a deadly weapon, see RSA 625:11, V (2016), and conduct after an accident, see RSA 264:25 (2014) (amended 2017, 2018). On appeal, he argues that the trial court erred by denying his motions for judgment notwithstanding the verdict (JNOV) on the basis that there was insufficient evidence that he acted "recklessly" and that his automobile constituted a "deadly weapon." He also argues that the trial court erred by denying his motion for a new trial based upon ineffective assistance of counsel. We affirm.

The jury could have found the following facts.  The defendant, driving north on Interstate 89 in Grantham in his 7,300-pound sport utility vehicle, began tailgating a Volkswagen Jetta transporting the victim (driver of the VW) and his three-year-old son.  Approaching a construction area, the defendant made a hand gesture and moved into the right lane, passing extremely close to the rear of the VW.  The defendant abruptly cut back into the left lane, causing the rear of the SUV to hit the front of the VW.  The victim was forced to brake heavily and veer right, lost control of his car, and immediately crashed into a guardrail located above an underpass at approximately 65-70 miles per hour.  After the crash, there were VW parts, fluids, and tire marks all over the highway.  The victim and his son were transported by ambulance to the hospital.  After the accident, the defendant drove away from the scene, but police identified his vehicle's license plate and arrested him later that day.

Video cameras located in the front and back of the VW captured the events above.  Video clips from both cameras were admitted as full exhibits and played multiple times to the jury throughout the trial.

## I. Sufficiency of the Evidence

The defendant argues that the trial court erred in denying his motion for JNOV based upon the sufficiency of the evidence.  A motion for JNOV presents a question of law, which we review de novo.  Halifax-American Energy Co. v. Provider Power, LLC, 170 N.H. 569, 576 (2018).  On reviewing a ruling for JNOV, we will uphold the jury's verdict unless no rational trier of fact could find guilt beyond a reasonable doubt, considering all the evidence and all reasonable inferences therefrom in the light most favorable to the State.  See State v. Spinale, 156 N.H. 456, 464 (2007).  The trial court cannot weigh the evidence or inquire into the credibility of the witnesses, and if the evidence adduced at trial is conflicting, or if several reasonable inferences may be drawn, the motion should be denied.  Id. at 463.

To convict the defendant of felony reckless conduct as charged in the indictment, the State had to prove: (1) he recklessly engaged in conduct that placed or may have placed another person in danger of serious bodily injury by operating his SUV erratically and aggressively cutting off the victim's vehicle; and (2) by using his SUV in such a fashion, it constituted a deadly weapon.  RSA 631:3, I, II; see RSA 625:11, V.  On appeal, the defendant asserts that the evidence was insufficient to prove that he acted with a "reckless" mens rea and that he used his SUV as a deadly weapon.

### A. "Reckless" Mens Rea

To prove that the defendant acted with a "reckless" mens rea, the State had to show that he was aware of, but consciously disregarded, a substantial, unjustifiable risk that serious bodily injury would result from his conduct.

State v. Hull, 149 N.H. 706, 713 (2003). "In addition, the State had to show that the defendant's disregard for the risk of injury to another was a gross deviation from the regard that would be given by a law-abiding citizen." Id. "This is a subjective inquiry" that "does not depend upon the actual harm resulting from the defendant's conduct." Id. "Nor does it depend upon whether the defendant anticipated the precise risk or injury that resulted." Id. Rather, in this case, the jury had to find that the defendant acted erratically and aggressively by cutting off the victim's car with his SUV and that his conduct caused a substantial and unjustifiable risk of injury to the victim and his son. See id. "Then the jury had to find that the defendant's conduct in creating that risk was a gross deviation from that of a law-abiding person," because that person would not have driven so erratically or aggressively and would not have cut off the victim's car. Id. Because determining the defendant's awareness is a subjective inquiry, it may be proved by any surrounding facts or circumstances. Id. The jury could have considered the defendant's conduct before and after the accident, including the fact that he left the scene without stopping. See id.

Viewing all of the evidence and the reasonable inferences therefrom in the light most favorable to the State, we hold that a rational trier of fact could have found, beyond a reasonable doubt, that the defendant acted with a "reckless" mens rea. A rational trier of fact could have found that the defendant's SUV — weighing 7,300 pounds — was much larger than the victim's Volkswagen Jetta, that the defendant tailgated the victim before passing him in the right lane, that both cars were approaching a construction area, that the defendant suddenly changed lanes so as to pass the victim and then abruptly cut in front of the victim's vehicle, hitting the front of the victim's vehicle in the process, and that the defendant's conduct caused the victim to brake hard, lose control of his car, and crash into a guardrail at 65-70 miles per hour.

From the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the State, a rational trier of fact could have found, beyond a reasonable doubt, that the defendant's conduct constituted a gross deviation from that of a law-abiding citizen because a law-abiding citizen would not have returned to the left lane until safely clear of the victim's vehicle. See id. at 707, 714 (finding sufficient evidence for reckless conduct when defendant drove so close to a police officer conducting a traffic stop that he hit the police officer with his side mirror); see also RSA 265:18 (2014) (detailing the procedure for overtaking a vehicle on the left). Likewise, a rational trier of fact could have found, beyond a reasonable doubt, that the defendant's erratic and aggressive driving created a substantial and unjustifiable risk of injury to the victim and his son. See Hull, 149 N.H. at 714.

Additionally, a rational trier of fact could have found, beyond a reasonable doubt, that the defendant was aware of, and consciously disregarded, the substantial and unjustifiable risk that his conduct created. The videos show the defendant move into the right lane, pass extremely close to the rear of the victim's vehicle, and then abruptly cut back into the left lane, causing the rear of the SUV to hit the front of the victim's vehicle. A rational trier of fact could have found that the defendant's abrupt maneuvers, causing his SUV to hit the VW, demonstrated that he was aware of, and consciously disregarded, a substantial and unjustifiable risk. Finally, after the accident, the defendant left the scene. A rational trier of fact could have found that such evidence demonstrated the defendant's consciousness of guilt. See State v. Torrence, 134 N.H 24, 27 (1991) ("It is beyond dispute that evidence of post-offense flight is probative on the issue of the defendant's consciousness of guilt.").

Based upon all of the above evidence and the reasonable inferences to be drawn therefrom, viewed in the light most favorable to the State, we hold that a rational trier of fact could have found, beyond a reasonable doubt, that the defendant acted with "reckless" intent. Because the evidence adduced at trial regarding the defendant's "reckless" intent was solely circumstantial, in order to prevail on appeal, "the defendant must establish that the evidence does not exclude all reasonable conclusions except guilt." State v. Germain, 165 N.H. 350, 361 (2013), modified on other grounds by State v. King, 168 N.H. 340, 345 (2015). "The proper analysis is not whether every possible conclusion consistent with innocence has been excluded, but, rather, whether all reasonable conclusions based upon the evidence have been excluded." Id. To the extent that the defendant argues that other inferences could have been drawn from the evidence, we disagree. First, the defendant argues that it was unforeseeable that the victim would lose control of his vehicle and crash. For the reasons set forth above, we disagree. Second, the defendant argues that the State failed to show awareness because he denied having any knowledge of the accident when he was arrested. This argument is similarly unavailing because the defendant's statements at the time of arrest were not put forth as evidence for the jury to consider. Lastly, the defendant argues that it is unlikely that someone who knew he fled an accident would park his car in his driveway and not hide it from view. Whether the defendant knew that he fled an accident is not the issue on appeal. A rational trier of fact could find that the defendant acted with "reckless" intent whether or not he knew he left the scene of an accident.

B. Deadly Weapon

The defendant next argues that the State failed to show that he operated his vehicle as a deadly weapon. A deadly weapon is defined in RSA 625:11, V as "any firearm, knife or other substance or thing which, in the manner it is used, intended to be used, or threatened to be used, is known to be capable of

producing death or serious bodily injury." "Many innocuous everyday objects become deadly weapons when they are put to assaultive uses." Hull, 149 N.H. at 714. Whether the defendant operated his vehicle in a manner that rendered the vehicle a deadly weapon is a question of fact for the jury to decide based on the totality of the circumstances. Id. at 715. "We have never required that an object be intrinsically capable of causing death or injury." Id. "Nor have we required that an object actually cause death or injury." Id.

From the evidence and all reasonable inferences therefrom, viewed in the light most favorable to the State, a rational trier of fact could have found, beyond a reasonable doubt, that tailgating the victims, abruptly changing lanes, cutting off the victims, and hitting the front of the victim's car with the back end of a 7,300-pound SUV, causing the victim to brake hard, lose control, and crash into a guardrail at 65-70 miles per hour, constituted a manner of use that is "known to be capable of producing death or serious bodily injury." RSA 625:11, V. Contrary to the defendant's assertions, the totality of the evidence, viewed in the light most favorable to the State, together with the reasonable inferences to be drawn therefrom, was sufficient for a rational trier of fact to find, beyond a reasonable doubt, that he used his vehicle as a deadly weapon. See Hull, 149 N.H. at 715.

The defendant's additional arguments concerning the use of his vehicle as a deadly weapon are not preserved for appeal. First, the defendant argues that RSA 625:11, V requires the State prove that he intended to use his vehicle to cause death or serious bodily injury and the State failed to do so. Second, the defendant argues that RSA 625:11, V includes only those actions where death or serious bodily injury is "more than likely to occur" and the State failed to show that death or serious bodily injury was more than likely to result from his conduct. These arguments concern interpretations of RSA 625:11, V. In the trial court, however, the defendant asserted only that the evidence was insufficient to support his convictions; therefore, his statutory interpretation arguments are waived. See State v. Dodds, 159 N.H. 239, 243-44 (2009) (holding that the defendant waived a statutory interpretation argument on appeal because, in the trial court, the defendant argued only that the evidence was insufficient to support a conviction). During oral argument, the defendant raised, for the first time, an argument that vehicles were not contemplated by the legislature to be regarded as deadly weapons under RSA 625:11, V. Because this argument was not briefed to this court, or argued before the trial court, we decline to address it. Aubert v. Aubert, 129 N.H. 422, 428 (1987).

II. Ineffective Assistance of Counsel

The defendant next argues that the trial court erred when it denied his motion for a new trial based upon ineffective assistance of counsel. Specifically, he argues that trial counsel should have retained a second accident reconstruction expert to support the defense's theory of pure accident.

In order to trigger a State constitutional analysis, "the defendant must raise the State constitutional issue below" and "the defendant's brief must specifically invoke a provision of the State Constitution." State v. Dellorfano, 128 N.H. 628, 632 (1986). We confine our analysis to the defendant's federal constitutional claim because he has failed to cite a specific provision of the State Constitution on appeal.

For the defendant to prevail on an ineffective assistance of counsel claim, he must show, first, that counsel's representation was constitutionally deficient (performance prong) and, second, that such deficient performance prejudiced the outcome of his case (prejudice prong). Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the performance prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688. To satisfy the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

Both the performance and prejudice prongs of an ineffectiveness inquiry are mixed questions of law and fact. Id. at 698. "Therefore, we will not disturb the trial court's factual findings unless they are not supported by the evidence or are erroneous as a matter of law, and we review the ultimate determination of whether each prong is met de novo." State v. Whittaker, 158 N.H. 762, 768 (2009) (citation omitted). Because we hold that trial counsel's performance was reasonable under all of the circumstances, we need not address the question of prejudice to the defendant. See Strickland, 466 U.S. at 687.

Whether performance was deficient depends on "whether counsel's assistance was reasonable considering all the circumstances." Id. at 688. Because, with hindsight, it can be easy to second-guess decisions that prove unsuccessful, "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689.

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

6

Id. (quotation omitted). "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688. "To establish that his trial attorney's performance fell below this standard, the defendant 'has to show that no competent lawyer' would have failed to consult with [a second] accident reconstruction expert." Whittaker, 158 N.H. at 768-69 (quoting Lynch v. Ficco, 438 F.3d 35, 49 (1st Cir. 2006). "In assessing the reasonableness of trial counsel's decision not to consult with an expert, we 'recognize that reasonably diligent counsel are not always required to consult an expert as part of pretrial investigation in a case involving the use of expert witnesses by the state.'" Whittaker, 158 N.H. at 769 (quoting Dugas v. Coplan, 428 F.3d 317, 328-29 (1st Cir. 2005)). Furthermore, "[a] defendant's attorney is not required, in every case, to consult experts even if the State will be putting on expert witnesses." Id. (citing Dugas, 428 F.3d at 329). "A defense attorney may have no duty to consult with an expert, for instance, when there is 'no need to question the validity of the government's proposed evidence or the evidence may be so weak that it can be demolished on cross-examination.'" Id. (quoting Dugas, 428 F.3d at 329). Lastly, we give counsel's strategic decisions a substantial amount of deference: "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 690-91.

The trial court made the following findings. Defense counsel made a strategic decision to defend the case with a theory of pure accident, thus devoid of the "reckless" intent needed to convict. Counsel chose to avoid a "blame the victim" defense because he knew that the jury would see the video and he did not believe that the video showed any contribution by the victim to the crash. To be sure that there was no contribution by the victim, defense counsel obtained the victim's phone records in order to investigate whether the victim was distracted, but the records showed no activity at the time of the crash. To further his investigation, trial counsel retained an accident reconstruction expert. After reviewing the video, the expert advised trial counsel that he could not be of assistance because he could not offer a favorable opinion. Post-trial, the defendant, with new counsel, retained a different accident reconstruction expert who placed fault for the accident with the victim, opining that he believed the victim overreacted when the defendant returned to the passing lane. The trial court found, however, that "the video evidence introduces a factor that makes it seemingly superfluous for someone else to explain to the jurors what they can see for themselves." The trial court further emphasized that, "[w]hether or not the theory [of pure accident] is plausible, the important thing is that trial counsel had a theory of defense based on sound reasons that simply was different from the 'blame the victim' premise constructed post-trial."

7

The defendant argues that his trial counsel was constitutionally deficient because counsel failed to retain a second accident reconstruction expert. While this is an issue of first impression in New Hampshire, jurisdictions that have addressed the question have overwhelmingly held that failing to retain a second expert opinion is not deficient performance. See, e.g., Caudill v. Conover, 881 F.3d 454, 463 (6th Cir. 2018) (holding that the defendant's lawyer was not incompetent for failing to call a second expert, especially because the second expert had the potential to do more harm than good); Wesbrook v. Thaler, 585 F.3d 245, 253 (5th Cir. 2009) ("The state court's determination that Wesbrook's counsel did not render ineffective assistance by failing to secure additional expert testimony . . . is not an objectively unreasonable application of Strickland."); Sidebottom v. Delo, 46 F.3d 744, 753 (8th Cir. 1995) (noting that the court has never suggested that counsel must continue to look for favorable experts after receiving an unfavorable opinion); Stone v. State, 798 S.E.2d 561, 581 (S.C. 2017) ("The 'prevailing norms' that guide our judgment as to whether counsel's performance was reasonable do not require counsel to pursue a second expert after a qualified expert has given an adverse opinion."); In re Williams, 101 A.3d 151, 156 (Vt. 2014) ("Having hired a competent, experienced expert, a defense lawyer cannot be criticized for accepting that person's opinion. There is no duty to continue to search for someone who will take the other side."); cf. Elledge v. Dugger, 823 F.2d 1439, 1447 n.17 (11th Cir. 1987) ("We emphasize that the duty is only to conduct a reasonable investigation. Counsel is not required to 'shop' for a psychiatrist who will testify in a particular way.").

Here, trial counsel's decision not to retain a second expert was based upon a reasonable investigation. Trial counsel reviewed the video of the events and retained an accident reconstruction expert. After reviewing the case, including the video, the expert said he could not be of assistance because he would not be able to provide a favorable opinion. Finally, as part of his investigation, trial counsel reviewed the victim's phone records to make sure that inattentiveness by the victim did not contribute to the accident. Under these circumstances, we agree with the trial court that trial counsel's failure to retain a second accident reconstruction expert did not constitute constitutionally deficient performance.

To the extent the defendant argues that, without an accident reconstruction expert, trial counsel should have put the defendant on the stand, "he has not provided us with a record that demonstrates that he preserved this argument for our review." State v. Tsopas, 166 N.H. 528, 531 (2014). We therefore decline to address it.

Affirmed.

BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.